New York and Queens Electric Light and Power Company, Plaintiff, *v.* The City of New York, Defendant.

First Department, November 4, 1927.

Municipal corporations — rapid transit — city of New York in building elevated railroad acts in proprietary capacity and does not exercise governmental function — city is liable to public service corporation for expense of relocating electric wires made necessary by erection of elevated railroad — Rapid Transit Act applies to elevated railroad.

The city of New York acted in a proprietary capacity and not in the exercise of a governmental function when it constructed an elevated railroad in Roosevelt avenue in the borough of Queens.

It became necessary for the plaintiff, an electric lighting and power company, to relocate its electric wires while the construction of the elevated railroad was being made. Since the city was acting in a proprietary capacity it is liable to the plaintiff for the expense incurred in the relocation and re-establishment of plaintiff's electric lines in Roosevelt avenue.

Moreover, the provisions of the Rapid Transit Act which became a law prior to the time when the city commenced the erection of surface railroads and which related principally to subways, are applicable to surface structures as well as to subway construction, and the provisions thereof are broad enough to impose upon the city the liability for the relocation of the electric wires of the plaintiff.

Submission of a controversy upon an agreed statement of facts pursuant to sections 546 and 547 of the Civil Practice Act.

*Chauncey B. Garver* of counsel [*John A. Garver* and *P. F. W. Ruther* with him on the brief; *Shearman & Sterling,* attorneys], for the plaintiff.

*Joseph A. Devery* of counsel [*George P. Nicholson, Corporation Counsel*], for the defendant.

Merrell, J. The question presented by this controversy is whether the plaintiff or the defendant should bear the expense, amounting to $9,287.56, of the removal and relocation of the electric lines of the plaintiff company on Roosevelt avenue, in the borough of Queens, made necessary by the erection in said avenue by the city of New York, acting through its rapid transit commission, of an elevated railroad structure. The plaintiff is a public service corporation engaged in generation and distribution of electricity for light, heat and power purposes, serving its patrons in the borough of Queens, New York city. Therefore, the plaintiff was legally authorized to maintain, use and operate in the public streets and avenues in said borough, including Roosevelt avenue, poles, wires and other fixtures for the transmission of electrical

current for the purpose of supplying its patrons, and also for street lighting purposes.   On or about June 18, 1923, the defendant, acting through its board of rapid transit commissioners, under the provisions of the Rapid Transit Act, being chapter 4 of the Laws of 1891 and acts amendatory thereof, entered into a contract with a corporation known as McClintic-Marshall Company to furnish and erect necessary structural steel for the construction of an elevated railroad through Roosevelt avenue between Alburtis and Peartree avenues.   This elevated railroad structure when completed was designed to occupy substantially the entire street area of Roosevelt avenue.   In order to erect said elevated structure it became necessary to temporarily remove and relocate the poles, wires and other fixtures of the plaintiff running through Roosevelt avenue.   It is stipulated that under the terms of the contract between the rapid transit commission acting for the defendant and the McClintic-Marshall Company the latter was obligated, if required, to remove and relocate in a safe and permanent condition the wires, cables and poles which interfered with the erection of structural steel for the superstructure of the said rapid transit railroad or came within the operating clearance thereof to the reasonable requirements of the several owners " and as directed by the engineer of the Transit Commission."   The contractor was also required to do all temporary work necessary to maintain the regular service of the cables and wires during their removal and relocation, such work to be done in accordance with the standard type and character of similar construction of the various owning companies and to the approval of the transit commission's engineer.   The contract further provided that the city would pay to the contractor for all the above work as extra work under the contract, if the contractor were required to do such work, the actual and necessary cost of doing the same, which cost should include labor, power, materials, superintendence and insurance, and in addition thereto five per cent of such actual and necessary cost to cover the contractor's superintendence, administration and other overhead expenses, the existing materials and appurtenances to be preserved and used wherever possible.   Acting upon the assumption that the plaintiff should bear the expense of removal and relocation of its lines, the engineer for the transit commission did not direct the McClintic-Marshall Company to remove and relocate the plaintiff's lines, as he clearly might have done under the terms of the contract.   On the contrary, the city made demand upon the plaintiff that such removal and relocation be made by the plaintiff at its sole cost and expense.   The right of plaintiff to maintain

35

its poles, wires and fixtures in said avenue was pursuant to a franchise theretofore granted to it and to its predecessors in connection with the plaintiff's obligation to supply electric current to the owners and occupants of premises abutting on said portion of Roosevelt avenue and the intersecting streets and other places and to furnish electric current for street lighting purposes on said avenue and intersecting streets. No other person or corporation, save the plaintiff, was supplying electric services in said territory. On March 25, 1924, in response to the demand of the transit commission, the plaintiff addressed to said commission a communication to the effect that the plaintiff was willing to go to the expense of removing its lines under the terms and conditions therein stated, the gist of which was that the expense of such removal and relocation should ultimately be left to judicial determination. On or about April 5, 1924, the plaintiff and defendant, acting by the transit commission, duly entered into an agreement whereby the plaintiff agreed to expeditiously remove all its wires and other attachments from their locations along Roosevelt avenue between Alburtis and Peartree avenues and temporarily maintain in such location and manner as not to interfere with the construction of the said elevated structure its said wires and attachments, and permanently reroute and relocate the same in accordance with the commission's plans on file in the office of the chief engineer of the commission, and to attach their said wires to the elevated railroad structure so to be erected by said transit commission in the manner therein provided for and in such location as not to interfere with the maintenance of said elevated railroad or its equipment and appurtenances or the operation of trains over the same and the use thereof by passengers. It was further agreed that all such work should be done at the sole cost and expense of the plaintiff in the first instance, without prejudice, however, to plaintiff's claims that the city was under legal obligation to pay for the cost of such removal and relocation, and that the defendant and the transit commission would co-operate with plaintiff in securing a prompt legal adjudication upon an agreed statement of facts or otherwise of the question of the liability or not of the city to pay for such work or any part thereof; and the defendant further agreed to pay the plaintiff the amount actually and necessarily expended in the performance of such work or any part thereof, if it should be finally determined by a court of competent jurisdiction that the work of removing and relocating said wires and structures of the plaintiff through and above Roosevelt avenue constituted the obligation of the city and imposed upon it the duty of paying for the cost of such work. The present submission to this court is pursuant

to the aforesaid agreement between the parties. After making said agreement the plaintiff duly perfcrmed the work and incurred the expense of such removal and relocation of its lines and fixtures at an expense of $9,287.56. Thereafter the plaintiff duly demanded the payment of said claim by filing with the comptroller of the city of New York, as required by the Greater New York Charter, a written demand therefor. More than thirty days have elapsed since the filing of the said demand and the said comptroller has refused and neglected to make an adjustment of the said claim. It is stipulated that this court shall render such judgment as is proper in the premises, but that such judgment shall be without costs in any court.

We are of the opinion that under the stipulated facts the city of New York is obligated to pay such expenses for the removal and relocation of the plaintiff's said lines. We think that in constructing the railroad in question the city was not acting in any governmental capacity, but was engaged in a proprietary enterprise of building a railroad. There is no contention on the part of the city that the removal and relocation of the plaintiff's wires was occasioned for any purpose other than the erection and operation of said railway. The demand by the city for the relocation of the plaintiff's poles and wires was upon the sole ground that it interfered with and prevented the construction and operation of the elevated railroad, and removal of everything interfering with or obstructing or preventing the construction of said municipal rapid transit elevated railroad was required to be expeditiously done so as not to cause delay in the construction of said municipal public improvement. No claim has been made that prior to the construction of said elevated road the poles, wires and appliances of the plaintiff in any manner interfered with the ordinary and usual use by the public of said avenue. Unquestionably had such removal been required by a regrading of the street by the city or for any other purpose required for the use of the street by the public the plaintiff, if required, would have been compelled, at its own cost and expense, to relocate its said poles and wires to conform with such changed conditions. The law is reasonably well settled that when the city engages in the construction of a rapid transit line it is not performing a governmental act, but acting in a proprietary capacity. (*Matter of Rapid Transit R. R. Commissioners,* 197 N. Y. 81; *Litchfield Construction Co.* v. *City of New York,* 244 id. 251, 263.) The position of the defendant in this respect would not be different if it were a private corporation or person. In the construction of this elevated railway it was not performing a governmental act. The distinction between a govern-

mental and a proprietary act is clearly drawn in many of the decisions of the courts of this State and of sister States and of the United States.   (*Oakes Mfg. Co.* v. *City of N. Y.*, 206 N. Y. 221, 228; *City of Los Angeles* v. *Los Angeles Gas & Elec. Corp.*, 251 U. S. 32; *Vilas* v. *City of Manila*, 220 id. 345; *South Carolina* v. *United States*, 199 id. 437; *New Orleans Gas Light Co.* v. *Drainage Comm.*, 197 id. 453; *Vicksburg* v. *Vicksburg Waterworks Co.*, 206 id. 496, 508; *Central Wisconsin Power Co.* v. *Wisconsin T., L., H. & P. Co.*, 190 Wis. 557;   209 N. W. 755.)   We are of the opinion that the case of *Matter of Rapid Transit R. R. Commissioners (supra)* is decisive of the question here under consideration.   In that case the Court of Appeals held that the construction of a subway in the city of New York under the Rapid Transit Act is a business enterprise of the city through which money may be made or lost the same as if it were owned by an ordinary railroad corporation. It was built by and belongs to the city as a proprietor, not as a sovereign, and comes within none of the apparent exceptions to the command of the Constitution that private property shall not be taken for public use without just compensation.   No different, it seems to us, is the situation here, where the city is acting in a proprietary capacity in the construction of an elevated railway through which money may be made or lost the same as though owned by an ordinary railroad corporation.   In the very able opinion by Judge VANN, writing for the Court of Appeals, in *Matter of Rapid Transit R. R. Commissioners (supra)*, that learned jurist said (at p. 96): " The city owns the subway, and it is a railroad corporation so far as the construction, operation and leasing thereof is concerned.   It was not required, but simply permitted, to build and operate the road.   It is authorized to lease its railroad, either for ' a specified sum of money or a specified proportion of income, earnings or profits; ' or it may operate the road itself and charge such rates of fare for the transportation of persons and property as may be fixed by its own boards and officers.   (L. 1909, ch. 498, §§ 27 and 30.)   In other words, the subway is a business enterprise of the city, through which money may be made or lost, the same as if it were owned by an ordinary railroad corporation.   It was built by and belongs to the city as a proprietor, not as a sovereign."

It must be conceded that the possession by the plaintiff of the avenue in question with its poles, wires and appliances was a proper use of the street duly granted to the plaintiff.   The Court of Appeals, in *Matter of Rapid Transit R. R. Commissioners (supra)*, held that a rapid transit railroad was not an ordinary street use. In the erection of this railway the city appropriated substantially the entire street area, and the removal and relocation of plaintiff's

poles and wires theretofore lawfully located and maintained were made necessary to permit the erection of the elevated structure. Under such decision of the Court of Appeals the city had no more right to interfere with the plaintiff's proper exercise of its franchise than would a private railroad corporation or an individual have. " It can lawfully claim no immunity from liability, except such as would belong to a railroad company, engaged in a similar enterprise, under like circumstances." (*Sinsheimer* v. *Underpinning & Foundation Co.*, 178 App. Div. 495, 504.) If the city is liable for damages sustained in the construction of subways, as held in the cases hereinbefore cited, why should it not be liable for damages sustained by a lawful occupant of a street arising from the construction by the city of an elevated railway structure in the street? The poles, wires and appliances of the plaintiff in the avenue in question constituted property of which the plaintiff could not be deprived without just compensation. Unless the removal and relocation of said lines be made necessary for the usual use of the street by the public and compellable in a proper and reasonable exercise of the police power by the city in the exercise of governmental authority, the owner thereof cannot be compelled to remove or relocate the same without just compensation. In the case of *City of Los Angeles* v. *Los Angeles Gas & Elec. Corp.* (251 U. S. 32) the United States Supreme Court held that an ordinance requiring the removal and relocation of poles and other properties in the streets to permit the construction of a municipal electric lighting system which the city declared was necessary for public peace, health and safety was invalid. In that case the city demanded, pursuant to such ordinance, the removal of the poles of the public service corporation so as to accommodate a municipal lighting system. This the company refused to do and brought action to establish the invalidity of the ordinance and to enjoin its enforcement. The United States Supreme Court held the ordinance unconstitutional. At pages 37, 39 and 40 the United States Supreme Court said:

" Thus the only question is whether the city may as matter of public right and without compensation clear a ' space ' for the instrumentalities of its system by removing or relocating · the instrumentalities of other systems. * * *

" A franchise conveys rights and if their exercise could be prevented or destroyed by a simple declaration of a municipal council, they would be infirm indeed in tenure and substance. It is to be remembered that they come into existence by compact, having, therefore, its sanction, urged by reciprocal benefits, and are attended and can only be exercised by expenditure of money, making them

a matter of investments and property, and entitled as such against being taken without the proper process of law — the payment of compensation.    *    *    *

"It will be observed that we are not concerned with the duty of the corporation operating a public utility to yield uncompensated obedience to a police measure adopted for the protection of the public, but with a proposed uncompensated taking or disturbance of what belongs to one lighting system in order to make way for another.    And this the Fourteenth Amendment forbids."

Moreover, the provisions of the Rapid Transit Act would seem to be broad enough to provide for the removal and relocation of the plaintiff's wires and appliances, and that the transit commission is authorized to acquire by grant or by condemnation property rights made necessary in the exercise of its functions. In the contract between the city and the McClintic-Marshall Company the contractor agreed that if required by the commission's engineer it would remove and relocate in a safe and permanent condition all wires, cables and poles which interfered with the erection of structural steel for the superstructure of said railroad and which came within the operating clearance thereof, to the reasonable requirements of the several owners.    The engineer refused to give such directions under the evident assumption that the city, acting through the transit commission, may order the removal and relocation of the plaintiff's lines without compensating the plaintiff for the expense thereof.    While the Rapid Transit Act became a law prior to the city's embarking in the erection of surface structures, and related principally to subways, in principle the provisions of the act should apply to surface structures as much as to those beneath the surface.

We are, therefore, of the opinion that the plaintiff is entitled to reimbursement by the city of New York for the expense incurred in the removal and relocation of its said lines and appliances. Judgment, therefore, should be directed in favor of plaintiff and against defendant for $9,287.56, without costs.

DOWLING, P. J., FINCH and McAVOY, JJ., concur; O'MALLEY, J., concurs in result.

Judgment directed in favor of plaintiff and against defendant for $9,287.56, without costs.    Settle order on notice.