TRANSIT COMMISSION, the Same Being the METROPOLITAN DIVISION OF THE DEPARTMENT OF PUBLIC SERVICE, Respondent, *v.* THE LONG ISLAND RAILROAD COMPANY, Respondent, Impleaded with NEW YORK AND QUEENS GAS COMPANY, Appellant.*

Second Department, February 7, 1930.

*Chauncey B. Garver* [*P. F. W. Ruther* with him on the brief], for the appellant.

*Frank C. Bowers* [*George H. Stover* with him on the brief], for the respondent Transit Commission.

*Vincent Victory* [*Arthur J. W. Hilly, Corporation Counsel*, with him on the brief], for the city of New York as *amicus curiæ*.

YOUNG, J.   The mandamus order, among other things, directs the appellant to relocate its main in the bed of Bell avenue, Bayside, so as to permit the Long Island Railroad Company to proceed with the work of the elimination of the grade crossing at that point, which is located in the borough of Queens.

The material facts appearing in the record are undisputed. Under the New York City Grade Crossing Elimination Act (Laws of 1926, chap. 510, superseded by Laws of 1928, chap. 677, as amd. by Laws of 1929, chaps. 431 and 681) a proceeding was instituted by the Transit Commission against the Long Island Railroad Company for the elimination of a grade crossing at the location in question. The appellant was notified and appeared at the hearing.   Plans, specifications and estimates of cost were prepared by the railroad and approved by the Commission.   On March 13, 1929, the railroad company notified the appellant that a relocation of its gas mains on Bell avenue and Cross Island boulevard would be necessary, and that work would be commenced about April 15, 1929.   The appellant refused to make such relocation and the railroad company notified the Commission that it could not proceed with the work until the removal and relocation of the appellant's gas main.   The Transit Commission thereupon instituted this proceeding by mandamus to compel the railroad company to proceed with the work, and the appellant to relocate its mains. The appellant opposed the application, submitting affidavits setting up its franchise, detailing the necessary work and the approximate cost thereof at $22,500, and contended that it was under no duty to relocate these mains at its own expense, but that the cost thereof was a part of the general cost of the improvement, to be paid as provided in the statute.   The learned Special Term granted the application, and the mandamus order appealed from was thereupon made and entered.

The grade crossing proceeding involved in this appeal was com-

menced under chapter 510 of the Laws of 1926, but that statute has been superseded by chapter 677 of the Laws of 1928 (as amended, as above, in 1929), section 14 of which provides that the latter statute shall apply to all pending proceedings under the former act. Section 3 of that statute, as amended by chapter 431 of the Laws of 1929, provides in substance that the cost of all eliminations ordered under either act shall be borne as follows: Forty-nine per cent by the State; one per cent by the city, and fifty per cent by the railroad corporation. The appellant contends in effect that, under this statute, the cost of relocating its mains is a part of the cost of elimination and is to be borne as provided by the statute. On the other hand, the respondent claims, and the Special Term has held, that this cost of relocation is no part of the cost of the elimination, but must be borne by the appellant under the common-law principle which requires a public utility corporation to relocate its structures whenever their presence interferes with any reasonable use of the street.

In considering the question presented, it will be helpful to consider the legislative purpose in enacting the various Grade Crossing Elimination Acts, including the statute involved in this appeal. There is no dispute as to this purpose. The legislative intent was manifestly to correct what had become an obviously dangerous condition by eliminating by degrees all railroad crossings at the grade of public streets. Various statutes were enacted to accomplish this object, the latest of which, so far as it applies to the city of New York, is the statute of 1928, above referred to. The danger arising from these grade crossings had been constantly increasing as the years went by, and at the present time, with the volume of traffic upon our highways, it has become acute.

It was held at an early date by the United States Supreme Court, in a case arising in the Supreme Court of Errors of the State of Connecticut, that the Grade Crossing Act of that State did not violate the inhibitions of the United States Constitution (Art. 1, § 10, subd. 1; 14th Amendt. § 1) upon the impairment of the obligation of contracts, or the deprivation of property without due process or of the equal protection of the laws, but was a valid exercise of the police power of the State and a legitimate exercise of legislative power in securing safety, health and morals. (*New York & N. E. R. R. Co.* v. *Bristol*, 151 U. S. 556.) The court in that case approved decisions of the Connecticut court which held in substance that " grade crossings were in the nature of nuisances which it was competent for the Legislature to cause to be abated, and that it could, in its discretion, require any party responsible for the creation of the evil, in the discharge of what were in a sense governmental duties, to pay any part, or all, of the expense of such abatement " (p. 567).

In this State the Legislature evidently recognized that the railroad crossings at grade had been constructed by the corporations under legislative authority, and that to compel them to bear the entire cost of elimination would be to impose a very heavy burden upon them, and that it was fair and just that a portion of this burden should be borne by the State and the municipality affected. It, therefore, apportioned the cost amongst the railroad, the State and the municipality, as provided in the statute, although, under the decision in *New York & N. E. R. R. Co.* v. *Bristol* (*supra*) it might have compelled the elimination by the railroads at their own cost.

These grade crossing elimination proceedings, therefore, although controlled and supervised by the public authorities, are, in effect, proceedings brought under statutes designed to eliminate a dangerous condition created by the railroads; in other words, as was said by the United States Supreme Court, to abate conditions in the nature of nuisances created and maintained by the railroads themselves. For the creation and maintenance of these dangerous conditions, the appellant was in no way responsible, and it urges that it should not be compelled to bear any part of the expense of the abatement.

It is well settled that at common law a public utility corporation is obliged to make such changes in its structures in the public highways as may be required by the public authorities to conform to any highway improvement undertaken by them. (*New Orleans Gas Co.* v. *Drainage Comm.*, 197 U. S. 453; *Chace Trucking Co.* v. *Richmond L. & R. R. Co.*, 225 N. Y. 435.) The improvement contemplated by this common-law principle must be, however, one made in furtherance of highway uses or for a governmental purpose, such as sewers, drains, paving, etc. Thus, it has been held that it had no application where the city sought to compel such relocation in order to accommodate the construction of a rapid transit elevated line (*N. Y. & Queens El. L. & P. Co.* v. *City of New York*, 221 App. Div. 544), or to permit the construction of a municipal street lighting system. (*Los Angeles* v. *Los Angeles Gas Corp.*, 251 U. S. 32.) These decisions proceed on the theory that, in making these improvements, the city acted in a proprietary rather than in a governmental capacity.

In *Postal Telegraph-Cable Co.* v. *D. & L. L., P. & C. Co.* (129 Misc. 591; affd., 225 App. Div. 728; affd., 251 N. Y. 562) it was held that where a telegraph cable corporation had constructed and maintained a telegraph line along a public street, and a power and light company had thereafter, pursuant to a franchise obtained from a town board, and by an order of the State Highway Com-

mission, located its poles in such a manner as would have seriously interfered with the telegraph company's line and with its service, and the power and light company had refused on demand to relocate the telegraph company's poles so that the interference would be minimized or obviated, and, in order to protect its service and lines from being seriously crippled, the telegraph company had relocated the poles at its own expense, the latter was entitled to be reimbursed by the former for such relocation.

In *W. U. Tel. Co.* v. *Syracuse El. L. & P. Co.* (178 N. Y. 325) it was held that a franchise to a corporation to place a structure beneath the streets is to be construed in the interests of the public, and the corporation cannot complain where another company located its subway under the direction of the city so close to plaintiff's subway as to cause inconvenience and expense in making repairs, if, under the circumstances, the location of the new subway is not an unreasonable interference with the plaintiff's rights. The court in that case said that the city could not destroy the plaintiff's line nor prevent reasonable access to it, but that it was not obliged to consult the mere convenience of the plaintiff nor study to save it from expense to the detriment of the public; that, while the city could not grant to another the right to use the same space occupied by plaintiff, it could authorize the use of any other space, provided access to the line was left open, even if less convenient and more expensive.

Neither of the two cases last above cited, however, covers the situation shown in the case at bar. Both involved the right of one public service corporation to interfere without compensation with the structure of another corporation already lawfully located in the highway, and in neither case was their interference compelled by the public authorities. The authority under which it was attempted was permissive merely, under a franchise granted.

In *People ex rel. L. I. R. R. Co.* v. *Pub. Serv. Comm.* (181 App. Div. 465; affd. on the opinion below, 224 N. Y. 565) a railroad company, under an order in a grade crossing proceeding, under section 91 of the Railroad Law, was required by a direction of the Public Service Commission to shift and relocate the tracks of trolley companies and the subsurface structures of a gas company and a water company. Failing to agree with these companies as to the payment of the expense thereof, and with the knowledge of the Public Service Commission, which took no action therein, the railroad company paid these expenses itself, and sought reimbursement therefor under the provisions of section 94 of the Railroad Law, as part of the cost of making the change of grade. The Public Service Commission, by an order made, refused to

allow this expense to the railroad company, justifying such order by the argument that this expense should have been borne by the trolley, water and gas companies, which it claimed were bound to and could have been compelled to shift and relocate their structures to meet the change of grade. It was held that, assuming for the purposes of the appeal that the companies whose structures were interfered with might have been compelled at their own expense to make the relocation in question, the railroad company was entitled to have the expense paid by it apportioned as part of the improvement under the statute, since the Public Service Commission alone could have compelled this work to be done by these companies and neglected to do so. The question involved in the case at bar, therefore, was not determined in that case.

In *New Orleans Gas Co.* v. *Drainage Comm.* (197 U. S. 453), cited in *People ex rel. L. I. R. R. Co.* v. *Pub. Serv. Comm.* (*supra*) in support of the proposition that the utility companies might have been compelled to make the relocation in question, it was held that a gas company might be charged with the cost of changes in the location of its pipes and mains under the city streets necessitated by the construction of a municipal drainage system authorized by statute, and that no contract rights acquired under its franchise were impaired. Of course, this simply states the common-law principle, and the changes made by the gas company in that case were made to conform to an ordinary street improvement.

Undoubtedly, this is a street improvement, analogous in some respects to a change of grade. It is not, in my opinion, however, an ordinary change of grade undertaken by the city or the State, but one compelled by the State under its police power to be made by the railroad company to abate the dangerous situation created and maintained by it. The fact that the State and the city bear part of the expense does not alter this fact. In my opinion, no fair or equitable principle requires that the appellant be compelled to bear part of the expense necessitated by a condition for which it is in no way responsible.

No doubt the State possesses the power to compel the appellant to relocate its structures to conform to the improvement in question. It has not, however, exercised this power by any express language contained in the statute. The question, therefore, is, is such exercise of power a necessary implication resulting from the common-law principle invoked by the respondent?

The case of *Erie R. R. Co.* v. *Public Utility Comrs.* (254 U. S. 394), cited by the respondent, did not involve the question presented upon this appeal, because in that case the New Jersey Grade Crossing Act expressly required the public utility cor-

porations to relocate their structures when so directed. (Act of March 12, 1913, N. J. P. L. 1913, chap. 57, p. 91.)

The city contends that grade crossing eliminations are State undertakings in the interest of public safety similar to those improvements involved in *People ex rel. N. Y. Elec. Lines Co.* v. *Squire* (107 N. Y. 593; affd., 145 U. S. 175) and *American R. T. Co.* v. *Hess* (125 N. Y. 641). Both of those cases involved the constitutionality of the act of the Legislature requiring the placing of all electrical conductors underground in certain cities of the State, and it was held to be a proper exercise of the police power of the State. I cannot see that these cases have any application to the case at bar. The statute considered in those cases contained no requirement concerning the relocation of the structures of other utility corporations. In that respect it was similar to the Grade Crossing Elimination Acts. If, in carrying out the requirements of the statute involved in those cases, it had become necessary to disturb or relocate the structures of other utility corporations, could it have been successfully contended that those corporations, which were in no way responsible for the dangerous situation created by the presence of electrical wires on the surface of the streets, could be compelled, under the common-law principle above referred to, to make the necessary changes at their own expense? I think not, nor, in my opinion, can the appellant be so compelled.

The respondent contends that this case is not analogous to the interference by one public utility corporation with the structures of another; that in such an instance the Legislature has recognized the propriety of placing upon the interfering corporation all expense of alteration, citing section 28 of the Railroad Law. That section provides for the construction of " tunnel railroads " and requires that " whenever it shall be necessary in constructing any railroad authorized by this section through any city or incorporated village, to alter the position or course of any sewer, or water or gas pipes, it shall be done at the expense of the railroad corporation." In my opinion, however, the Legislature used this language for greater caution, because the common-law principle referred to would have no application to the construction of a railroad under section 28 (*supra*), which interfered with the structures of utility corporations in the street, nor would it have any application if the work were undertaken by the city itself. (*N. Y. & Queens El. L. & P. Co.* v. *City of New York*, 221 App. Div. 544; *Los Angeles* v. *Los Angeles Gas Corp.*, 251 U. S. 32.) Without the language above quoted, the alteration would have to be made at the expense of the railroad corporation.

I conclude, therefore, that, since the common-law principle

does not apply to this grade crossing elimination, and since the Legislature has not, by express language in the statute, required the relocation of the appellant's structures at its own expense, the cost of such relocation is a part of the cost provided for in section 3 of the statute (as amd. *supra*), apportioned amongst the State, the railroad and the city, as therein provided.

It only remains to consider whether the mandamus order appealed from was proper, because, assuming appellant's contention to be sound, it might present its claim for reimbursement to the Court of Claims, under section 7 of the New York City Grade Crossing Elimination Act. That section provides, in substance, that if the work of said elimination causes damages to property not acquired, and the amount thereof is not agreed upon, a claim therefor may be presented to the Court of Claims, which may hear and determine the same. In my opinion, section 7 (*supra*) has no application to a claim of this character. The statute refers to " damage to property not acquired." Appellant's claim for reimbursement would not be of that character.

The mandamus order appealed from should, therefore, be reversed upon the law, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs.

KAPPER and HAGARTY, JJ., concur; CARSWELL, J., with whom LAZANSKY, P. J., concurs, dissents, with the following memorandum:

CARSWELL, J. (dissenting). I dissent. To relieve the appellant from the burden imposed upon it by the common law as a consequence of the exercise by the State of its police power, the appellant must invoke a statute which expressly and unequivocally gives it such a benefit. None is cited; therefore, the common law controls and the expense of relocation of its subsurface structures rests upon the appellant. The fact that the Legislature did not make such an express enactment for the benefit of the appellant and those similarly situated, in connection with grade crossing eliminations under the State's exercise of police power, is to be interpreted that the Legislature did not intend to relieve the appellant from the duty resting upon it under the common law to relocate its structures at its own expense when required so to do by the State. The appellant may not be relieved of that burden by implication. It should be remitted to the Legislature for relief, if any is to be given. If courts assume to give such relief, doing so will be a usurpation of undoubted legislative function.

LAZANSKY, P. J., concurs.

Mandamus order reversed upon the law, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs.