CITY OF NEW ROCHELLE, Plaintiff, *v.* WESTCHESTER ELECTRIC RAILROAD COMPANY and Others, Defendants.*

Supreme Court, Westchester County, November 23, 1940.

*Aaron Simmons, Corporation Counsel,* for the plaintiff.

*Alfred T. Davison,* for the defendants.

NOLAN, J.  The defendant Westchester Electric Railroad Company operates a street railway line known as the New Rochelle-

---

* Affd., 262 App. Div. 874.

Subway or " A " line, from the northerly terminal of the subway on White Plains road at Two Hundred and Forty-second street in the borough of the Bronx, through the city of Mount Vernon, the villages of Pelham Manor and Pelham, and the city of New Rochelle, to a terminal at or near the New Rochelle station of the New York, New Haven and Hartford Railroad Company. The portion of the route of this line within the city of New Rochelle is upon streets covered by franchises granted to the Westchester Electric Railroad Company, and to predecessor companies, namely, the New Rochelle Street Horse Railroad Company, the New Rochelle and Pelham Railway Company, and the New Rochelle Railway and Transit Company. On March 6, 1939, the council of the city of New Rochelle adopted a resolution purporting to terminate the consents and franchises granted to the defendant and its predecessors in interest for the operation of the " A " trolley lines, directing the defendant to cease operating the " A " trolleys, and authorizing the commencement of an action if the defendant should fail so to do. This action grows out of the refusal of the defendant Westchester Electric Railroad Company to cease such operation.

The franchises in question are unlimited as to term or duration.

It is claimed by the plaintiff that the franchises in question may be terminated at will, since public convenience and safety require such termination. In support of the allegations of the complaint as to the necessity of such termination, the plaintiff has introduced evidence to the effect that considerable congestion exists in the streets over which the " A " line runs, caused by the trolleys, and by automobile traffic and parking. Undoubtedly, the elimination of the " A " trolleys would improve conditions considerably. It may be that conditions might be likewise improved by regulations of defendant's operations, and of traffic and parking, in the areas where congestion has resulted. Plaintiff does not seek to regulate, however, but seeks to terminate entirely, the franchises heretofore granted.

Plaintiff's difficulty lies in the fact that the franchises in question are unlimited as to time or duration. Such franchises constitute property. When granted, they cannot be taken away, save by the terms therein prescribed, or by due process of law. (*People* v. *O'Brien*, 111 N. Y. 1, *City of New York* v. *N. Y. C. R. R. Co.*, 234 id. 113; *New York & Queens Electric Light & Power Co.* v. *City of New York*, 221 App. Div. 544; *Coney Island, Fort Hamilton & Brooklyn R. R. Co.* v. *Kennedy*, 15 id. 588; *Eighth Avenue Coach Corp.* v. *City of New York*, 170 Misc. 243.) Under the settled law of the State, the defendant has a property right in its franchises,

from the enjoyment of which it cannot be excluded without compensation. If public necessity requires its exclusion, the result can be accomplished by purchase, or by condemnation (*Coney Island, Fort Hamilton & Brooklyn R. R. Co.* v. *Kennedy, supra.*) Plaintiff contends that the franchises have been forfeited by nonuser, and by failure to file the bonds required. These allegations of the complaint have not been established by the evidence.

A question arises, however, with respect to certain portions of the defendant's line which are operated pursuant to franchises granted to predecessor companies. The defendant claims the right to these franchises by virtue of the surrender by the New Rochelle Railway and Transit Company of all of its capital stock to Westchester Electric Railroad Company by certificate dated May 31, 1893, filed and recorded in the office of the Secretary of State. The certificate of such surrender, produced on the trial, states that it was given and filed in pursuance of section 79 of the Railroad Law of 1892. The statute then in effect (Laws of 1890, chap. 565, amd. by Laws of 1892) provided that any railroad corporation, being the lessee of the road of any other railroad corporation, might take a surrender or transfer of the capital stock of the corporation whose road was held under lease, and that whenever the whole of such capital stock was so surrendered, and a certificate thereof was filed, the franchises of the corporation whose stock had been so surrendered thereupon vested in the corporation to which such surrender had been made. No provision was made by the statute for such a transfer to, or the vesting of such property in, a railroad corporation which was not a lessee. The plaintiff now contends that no proof has been presented that the defendant, at the time of the acquisition of the stock of its predecessor company, was a lessee of the road operated by it. This question was not litigated on the trial. The franchises of the predecessor companies, and the certificate of the surrender of capital stock, were annexed to plaintiff's complaint and received in evidence without objection. The certificate states that it was given pursuant to the statute. Since the statute makes no provision for a transfer of stock to any corporation other than a lessee, the natural inference from the evidence presented is that, at the time of the transfer, the defendant was a lessee of its predecessor company. The fact that the franchises of the predecessor companies were held by the defendant appears to have been recognized by the plaintiff, by the contract between the parties, dated December 27, 1905, and received in evidence as Defendant's Exhibit " C." On the evidence presented, it may not be decided that the defendant is operating on Main street between Center avenue and North avenue, and on

Huguenot street between Center avenue and North avenue, without a franchise. No franchise has been produced for the operation of defendant's line on Bridge street between Huguenot street and Railroad place. It appears from the evidence presented, however, that the operation of defendant's line on Bridge street was approved by the plaintiff by agreement between the plaintiff, the defendant, and the New Haven Railroad Company, dated April 21, 1905 (Defendant's Exhibit "N"), and the blue print attached to that agreement shows an existing track on Bridge street. Under the circumstances, and in the absence of other evidence, it must be presumed that a consent to such operation was obtained. (R. R. Law, § 171; *People ex rel. City of New York* v. *New York Railways Co.*, 217 N. Y. 310.)

The complaint, in so far as it seeks an injunction restraining operation of the defendant's "A" line, is dismissed, but since proof may be available as to the nature of defendant's rights with respect to its operation on Main and Huguenot streets, between Center avenue and North avenue, and on Bridge street, between Huguenot street and Railroad place, without prejudice to another action with respect to such portions of defendant's "A" line. The judgment may declare that the defendant Westchester Electric Railroad Company has the right to continue its operation of said line by virtue of the consents referred to in the complaint, and marked Exhibits Nos. 1, 2, 9, 10 and 11, and that such consents were not terminated by the resolution of March 6, 1939. On the evidence presented, the court will not declare the rights of the parties with respect to the consents referred to in the complaint, and marked Exhibits Nos. 4, 5, 6 and 7. Settle decision and judgment on notice.