NEW YORK CITY TUNNEL AUTHORITY, Appellant-Respondent, *v.* CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., et al., Respondents-Appellants, and POSTAL TELEGRAPH-CABLE COMPANY et al., Defendants.

First Department, June 27, 1945.

*Andrew Bellanca* of counsel (*Francis J. Bloustein* and *Leon Mendelson* with him on the brief; *Ignatius M. Wilkinson, Corporation Counsel*), for plaintiff-appellant and respondent.

*Horace R. Lamb* of counsel (*Thomas H. Beardsley, Carl M. Abromeit, Irving W. Young* and *Earle M. Simonson,* with him on the brief; *Beardsley & Taylor,* attorneys for defendants-respondents and appellants Consolidated Edison Company of New York, Inc., Consolidated Telegraph and Electrical Subway Company, New York and Queens Electric Light and Power Company and New York Steam Corporation; *Ralph W. Brown,* attorney for defendants-respondents and appellants New York Telephone Company and Empire City Subway Company [Limited]) for defendants-respondents and appellants.

TOWNLEY, J. Plaintiff, New York City Tunnel Authority, is a public benefit corporation created by chapter 1 of the Laws of 1936, re-enacted as title 6 of article 3 of the Public Authorities Law by chapter 870 of the Laws of 1939. Under this act the plaintiff constructed the Queens Midtown Tunnel in the City of New York.

Plaintiff sues at law to recover $535,500, the total of various amounts paid by plaintiff to its contractors as part of the cost of the construction of sections of the approaches to the said tunnel. Since the amounts claimed from each defendant are not disputed, it is unnecessary to particularize them.

The plaintiff, as it made its plans for the construction of the said tunnel, gave notice to the defendants that these expenses would be necessary to move and relocate the public service structures maintained by each of the defendants. Each defendant repudiated any duty to pay for the relocation of its property.

This act conferred permissive power upon the plaintiff to construct and operate among others the Queens Midtown Tunnel as a self-supporting and self-liquidating tunnel project under the East River.

Authority was granted (Public Authorities Law, § 629, subd. 4): " To acquire, in the name of the city, by purchase or condemnation, and use real property necessary or convenient for its corporate purpose, including real property of public utility corporations subject to the transportation corporations law or subject to the railroad law, notwithstanding that any such property shall have been acquired by condemnation or be devoted to public use, it being hereby expressly determined that the public use in the name of the city and in the hands or under the control of the authority shall be deemed superior to the public use in the hands of any such public utility corporation. All real property acquired by the authority by condemnation shall be acquired in the manner provided by the condemnation law."

In subdivision 7 of section 626 of the Public Authorities Law the term " real property " is defined as including franchises and structures. The term " approaches " is used in the act (§ 626, subd. 9) as meaning " all structures necessary or convenient to give access to the tunnels from connecting streets, roads and parkways."

Under the provisions of the act, after property has been condemned, the members of the board appointed under the act are empowered to construct and operate the project, to accept grants and loans, to fix and collect tolls, rentals and other charges and to issue and pay off the bonds and interest which are the obligations of the Tunnel Authority. This independent management of the tunnel may be continued until the debts arising out of the construction are paid.

The act further provides that the bonds and other obligations of the Authority shall not be a debt of the State of New York or of the city nor shall they be payable out of any funds other than those of the Authority (§ 639). Further authority is granted to construct and maintain within the tunnel project " telephone, telegraph or electric wires and cables, gas mains,

water mains and other mechanical equipment  \*  \*  \*,'' and to lease such facilities at such rates as it may determine. The act further contains an express agreement on the part of the State not to compete with plaintiff by authorizing the construction of any similar tunnel project. In addition to the powers specifically referred to herein, there were granted the usual incidental powers of a private corporation, such as the right to sue and be sued, to have and to hold personal property and to do all things necessary to carry out the powers expressly granted.

This somewhat detailed statement of the powers conferred upon the plaintiff indicates that in the construction and operation of this tunnel it was exercising proprietary and not governmental functions. It was a project in which money might be made or lost. In *Matter of Rapid Transit R. R. Comrs.* (197 N. Y. 81) the Court of Appeals by Judge VANN said, at pages 96–97: '' Was the action of the city in building the subway governmental or proprietary in character?

'' The city owns the subway, and it is a railroad corporation so far as the construction, operation and leasing thereof is concerned. It was not required, but simply permitted, to build and operate the road. It is authorized to lease its railroad, either for ' a specified sum of money or a specified proportion of income, earnings or profits; ' or it may operate the road itself and charge such rates of fare for the transportation of persons and property as may be fixed by its own boards and officers. (L. 1909, ch. 498, §§ 27 and 30). In other words, the subway is a business enterprise of the city, through which money may be made or lost, the same as if it were owned by an ordinary railroad corporation. It was built by and belongs to the city as a proprietor, not as a sovereign. (*Maxmilian* v. *Mayor, etc., of N. Y.,* 62 N. Y. 160; *Missano* v. *Mayor, etc., of N. Y.,* 160 N. Y. 123; *South Carolina* v. *United States,* 199 U. S. 437.) ''

The statement found in section 641 of the act, upon which the bonds of the plaintiff were declared exempt from taxation, does not change the proprietary character of the plaintiff's acts. This statement must be considered in connection with the purpose sought to be accomplished — exemption from taxation. It cannot control the plain meaning of the other provisions of the act and the consequences of the powers conferred. It has been held that legislative '' declarations '' in statutory enactments will not save the validity of statutes which, when considered in their entirety, are unconstitutional. (*N. Y. &*

*Queens El. L. & P. Co.* v. *City of New York,* 221 App. Div. 544, 549; *Los Angeles* v. *Los Angeles Gas Corp.,* 251 U. S. 32, 37, 39, 40.) Likewise, a " finding and declaration " as a basis for tax exemption cannot affect the proprietary character of an enterprise authorized by a statute, such as the act here considered.

The plain purpose of the statute was to permit but not compel the construction of this tunnel at the expense of the plaintiff. The relocation of the sub-surface structures of these defendants was obviously a part of such cost.

The common-law rule which holds that public service corporations maintain their rights in the street subject to reasonable regulation and control and are bound to relocate their structures in the street at their own expense when the public interest requires, has no application. In consideration of this question it must be borne in mind that this statute contains no delegation of the police powers of the State to this plaintiff. The powers conferred upon the plaintiff are precisely the same as those that would be conferred upon a private utility corporation engaged in the operation of the tunnel project for profit.

In *City of New York* v. *New York Telephone Co.* (278 N. Y. 9, 15) the Court of Appeals said: " No authority has been delegated by the Legislature to the city as owner of the subway to require relocation of public utility facilities at the expense of the utility. In relocating defendant's underground structures, the city acted solely in its proprietary capacity as owner and operator of the subway under the provisions of the Rapid Transit Act, and, having acted in that capacity, it must bear the cost."

That a corporation such as this plaintiff is not entitled to compel relocation of the facilities of a public service corporation at its own expense was held in *Transit Comm.* v. *Long Island R. R. Co.* (253 N. Y. 345, 351) where the court in its opinion said, when reviewing the precedents: " All these cases are to the point, that these public service corporations maintain their rights in the streets, subject to reasonable regulation and control, and are bound to relocate their structures at their own expense whenever the public health, safety or convenience requires the change to be made. This common-law rule, however, does not go so far as to place the cost of removal and relocation upon the company, when the change is required in behalf of other public service corporations or in behalf of municipalities exercising a proprietary instead of a govern-

mental function. The departure from the rule arises out of the distinction between public welfare and private enterprise of a *quasi* public nature. *(City of Los Angeles* v. *Los Angeles Gas & Electric Corp.,* 251 U. S. 32; *New York & Queens Elec. L. & P. Co.* v. *City of New York,* 221 App. Div. 544, and *City of New York* v. *Hudson & Manhattan R. R. Co.,* 229 N. Y. 141.) ''

Plaintiff places considerable reliance upon three cases: *Matter of Young* v. *Kracke* (262 App. Div. 67); *New York Telephone Co.* v. *New York City Tunnel Authority* (291 N. Y. 766); *Bachmann* v. *New York City Tunnel Authority* (263 App. Div. 945, appeal dismissed, 288 N. Y. 707). None of these cases is in point. They all involve technical change-of-grade claims.

An owner of real estate has no right to recover damages for change of grade and is only entitled to such damages as have been expressly authorized by the Legislature. These cases are authority only for the proposition that damages resulting from change of grade by this plaintiff and other public authorities there involved were not within the provisions of the Enabling Act (Administrative Code of the City of New York, § 307a–3.0) because the act of the Authority was not the act of the City of New York as required by the statute. Here, the question is not whether there may be recovery of consequential damages resulting from raising or lowering the grade of adjoining property. We are here dealing with a direct disturbance or taking of the facilities of one public service corporation for the necessity or convenience of another. Damage of that character has always been recoverable at common law.

On the plaintiff's appeal, the order should be affirmed, with $10 costs and disbursements to the defendants-respondents.

On the defendants'. appeals, the orders should be reversed, each with $10 costs and disbursements, and the motions to dismiss the complaint granted.

MARTIN, P. J., GLENNON, COHN and CALLAHAN, JJ., concur.

Orders appealed from by the defendants unanimously reversed, each with $10 costs and disbursements, and the motions granted. Order appealed from by the plaintiff unanimously affirmed, with $10 costs and disbursements to the defendants-respondents.