# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1184
CA 12-00075
PRESENT: SCUDDER, P.J., CARNI, SCONIERS, VALENTINO, AND WHALEN, JJ.

COUNTY OF ERIE, PLAINTIFF-RESPONDENT,

V                                          MEMORANDUM AND ORDER

M/A-COM, INC., ET AL., DEFENDANTS,
AND KEVIN J. COMERFORD, DEFENDANT-APPELLANT.
(APPEAL NO. 1.)

DAVID J. SEEGER, P.C., BUFFALO (DAVID J. SEEGER OF COUNSEL), FOR
DEFENDANT-APPELLANT.

GROSS, SHUMAN, BRIZDLE & GILFILLAN, P.C., BUFFALO (KATHERINE M.
LIEBNER OF COUNSEL), FOR PLAINTIFF-RESPONDENT.

-------------------------------------------------------------------------------

Appeal from an order of the Supreme Court, Erie County (John A. Michalek, J.), entered February 22, 2011. The order denied in part the motion of defendant Kevin J. Comerford to dismiss the first amended complaint against him.

It is hereby ORDERED that the order so appealed from is affirmed without costs.

Memorandum: Plaintiff, County of Erie (County), commenced this action to recover damages from its former employee, Kevin J. Comerford (defendant), for fraud and breach of fiduciary duty. Defendant appeals from an order denying in part his motion to dismiss the first amended complaint against him on the ground, inter alia, that the County lacks capacity to sue. The first amended complaint alleges that defendant, in his capacity as County Commissioner of Central Police Services, issued a memorandum to the County Legislature containing false representations concerning the appropriate vendors with which the County should contract for the upgrade of its computer-aided dispatch system. The first amended complaint further alleges that, based upon defendant's memorandum, the County entered into a contract with defendants M/A-Com, Inc., Tyco Electronics Corporation, and Intergraph Corporation (M/A-Com contract) that obligated the County to pay the sum of $4,093,000 for goods and services that at the time of the complaint had not been provided or completed.

There is no dispute that the County Legislature did not pass a resolution authorizing the commencement of this action. Contrary to defendant's contention, however, we conclude that, notwithstanding the absence of such a resolution, the County Executive was empowered to commence this action on behalf of the County (*see Matter of County of*

*Rockland v Town of Clarkstown*, 167 Misc 2d 367, 371). Under the County Charter, the County Executive is the Chief Executive Officer, the administrative head of the County government, and the Chief Budget Officer of the County. The County Charter grants the County Executive "all necessary incidental powers to perform and exercise any of the duties and functions specified . . . or lawfully delegated to him" (Erie County Charter § 302 [former (n)], now [m]). The County Executive is empowered by the County Charter to authorize the County Attorney to commence civil litigation to enforce any of the duties and functions lawfully designated to the County Executive (*see* § 602; *see also* § 302 [former (m)], now [l]; [former (n)], now [m]). Inasmuch as this action seeks to recover over $4 million dollars of the County's funds that were allegedly improperly paid under the M/A-Com contract as a result of defendant's alleged fraud, we conclude that the County Executive's duties as Chief Executive Officer and Chief Budget Officer of the County clearly embrace the subject matter of this action and empower him to authorize the County Attorney to commence the litigation (*see Rockland County*, 167 Misc 2d at 371).

As the dissent correctly notes, section 602 of the Erie County Charter permits the County Attorney to perform "such *additional and related duties* as may be prescribed by law, by the county executive or by resolution of the county legislature" (emphasis added). Inasmuch as section 602 specifically discusses the power of the County Attorney to prosecute an action, the dissent contends that section 602 "cannot be read to encompass the enumerated power to commence a civil action." To do so, in the opinion of our dissenting colleagues, "would render superfluous the County Legislature's inclusion of that enumerated power within section 602."

In our view, the dissent has conflated the distinct acts of prosecuting an action and commencing an action. Erie County Charter § 602 and County Law § 501 (1) limit the duties of a County Attorney, insofar as relevant to this appeal, to prosecuting or defending actions brought by or against the County. As the dissent correctly states, the board of supervisors or the legislature of a county is generally empowered to bring, i.e., commence, a civil action. Thus, the power to commence a civil action constitutes an additional and related duty, and our interpretation of both Erie County Charter § 602 and County Law § 501 (1) does not render any language in section 602 superfluous.

We reject defendant's further contention that the first amended complaint fails to plead a cause of action for fraud with sufficient particularity (*see* CPLR 3016 [b]; *Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 491-492).

As an alternate ground on which to dismiss the fraud cause of action, the dissent concludes that, to the extent that "[t]he operative allegations behind the County's fraud cause of action . . . are based solely on 'information and belief,' " those allegations are insufficient. We do not take issue with the legal authority cited by the dissent, but we decline to dismiss a complaint on a legal theory

not raised by the defendant on the underlying motion to dismiss or on appeal.  "It is well settled that '[a]n appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute or overcome them had those theories or questions been presented in the court of first instance' " (*Ciesinski v Town of Aurora*, 202 AD2d 984, 985).  We disagree with the dissent's conclusion that defendant's general contention that the first amended complaint fails to state a cause of action alleging fraud encompasses the specific theory that the County failed to identify the source of the information of the allegations made on "information and belief."  Had defendant advanced that theory, it is likely that the County would have been able to offer proof to overcome it.  Indeed, the ease with which the County's pleading deficiency could be overcome is the basis for the dissent's determination to dismiss the first amended complaint "without prejudice."  The County was not put on notice that such a theory for dismissal was being raised by defendant and thus had no opportunity to refute or overcome it (*cf. Belco Petroleum Corp. v AIG Oil Rig*, 164 AD2d 583, 598-599).  We decline to dismiss the first amended complaint on a deficiency that easily could have been addressed had it been raised by defendant.

Finally, we reject defendant's contention that he is immune from suit because he exercised discretion in recommending the M/A-Com contract, inasmuch as he is not being sued for an injury to a member of the public (*see Valdez v City of New York*, 18 NY3d 69, 76).

All concur except SCONIERS and WHALEN, JJ., who dissent and vote to modify in accordance with the following Memorandum:  We respectfully dissent because we cannot agree with the majority that plaintiff, County of Erie (County), has the capacity to sue and that the first amended complaint sufficiently states a fraud cause of action against Kevin J. Comerford (defendant).  We would therefore modify the order by granting in its entirety defendant's motion to dismiss the first amended complaint against him based on those grounds.

We first address the majority's conclusion that the County has the capacity to sue defendant.  "[C]apacity concerns a litigant's power to appear and bring its grievance before the court" (*Matter of Graziano v County of Albany*, 3 NY3d 475, 478-479 [internal quotation marks and citation omitted]).  To reach its conclusion, the majority reasons that the Erie County Charter empowers the County Executive to authorize the County Attorney to commence an action without a resolution by the County Legislature.  We disagree.  Pursuant to the County Law, the power to authorize a county attorney to bring civil actions and proceedings belongs to the board of supervisors or legislature of a county rather than its county executive (*see County of Sullivan v Town of Thompson*, 99 AD2d 574, 574-575; *see e.g. County of Niagara v Town of Royalton*, 48 AD3d 1072; *see generally* County Law §§ 150-a; 501 [1]).  Of course, a county may supersede the provisions of the County Law by enacting a local charter that conflicts with or limits the County Law (*see* § 2 [b]; *Matter of Gallagher v Regan*, 42 NY2d 230, 235; *Long Is. Liquid Waste Assn. v Cass*, 115 AD2d 710, 711-712, *lv dismissed* 67 NY2d 870).  Indeed, the Erie County Charter includes a provision recognizing that principle and mandating that,

"wherever and whenever any state law . . . is inconsistent with this charter, such law shall be deemed to the extent of such inconsistency to be superseded by this charter insofar as the county of Erie and its government are affected" (Erie County Charter § 103).  Thus, the relevant inquiry in this case is whether the Erie County Charter supersedes the County Law and empowers the County Executive to authorize the County Attorney to bring a civil action in the absence of a resolution from the County Legislature.  Contrary to the conclusion of the majority, we conclude that it does not.  In support of its conclusion, the majority relies on Erie County Charter §§ 302 (m) (former [n]) (hereafter, § 302 [m]) and 602, but, in our view, neither section contains language so empowering the County Executive.

We turn first to section 602, which lists the powers and duties of the County Attorney and provides that "[t]he county attorney shall be the legal advisor for the county and, on its behalf in county matters, of its officers and administrative units.  He or she shall, in all county legal matters of a civil nature, advise all county officers and employees and, where in the interest of the county, prepare all necessary papers and written instruments in connection therewith, prosecute or defend all actions or proceedings of a civil nature brought by or against the county; prepare resolutions, ordinances, legalizing acts and local laws to be presented for action by the county legislature, together with notices and other items in connection therewith; and perform such additional and related duties as may be prescribed by law, by the county executive or by resolution of the county legislature."

Section 602 describes three categories of powers and/or duties that fall within the purview of the County Attorney:  (1) advising the County in civil legal matters, which include prosecuting or defending actions; (2) preparing resolutions and/or local laws; and (3) performing "such *additional and related duties* as may be prescribed by law, by the county executive or by resolution of the county legislature" (*id.* [emphasis added]).  It is the third category of duties on which the majority must necessarily base its conclusion that the County Executive may authorize the County Attorney to commence an action without a resolution from the County Legislature.  Such an interpretation of section 602, however, runs contrary to the rules of statutory construction.  Because "the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583; *see Bluebird Partners v First Fid. Bank*, 97 NY2d 456, 460-461; *Matter of New York Skyline, Inc. v City of New York*, 94 AD3d 23, 26-27, *lv denied* 19 NY3d 809), and " 'effect and meaning must, if possible, be given to the entire statute and every part and word thereof' " (*Matter of New York State Superfund Coalition, Inc. v New York State Dept. of Envtl. Conservation*, 18 NY3d 289, 296, quoting McKinney's Cons Law of NY, Book 1, Statutes § 98; *see Sanders v Winship*, 57 NY2d 391, 395-396).  "[A]ll parts of a statute are to be harmonized with each other, as well as with the general intent of the statute" (*Rangolan v County of Nassau*, 96 NY2d 42, 48), and a construction "resulting in the

nullification of one part of the [statute] by another[ ] is impermissible" (*Matter of New York County Lawyers' Assn. v Bloomberg*, 95 AD3d 92, 101 [internal quotation marks omitted], *affd* 19 NY3d 712). "A construction rendering statutory language superfluous is to be avoided" (*Matter of Branford House v Michetti*, 81 NY2d 681, 688).

Applying the foregoing rules to this case, we note that the power to commence a civil action is enumerated in section 602 as one of the powers and duties of the County Attorney. That is not to suggest, however, that the County Attorney may commence a civil action on the County's behalf of his own volition. Section 602 must be read in conjunction with the County Law § 501 (1), which empowers a county "board of supervisors [or legislature] . . . to bring civil actions and proceedings[, whereas] the county attorney's authority is limited to prosecuting them" (*County of Sullivan*, 99 AD2d at 574-575). Pursuant to the last sentence of section 602, the County Executive may authorize the County Attorney to perform only "*additional and related duties*" (emphasis added). Those "additional and related duties," however, cannot be read to encompass the enumerated power to commence a civil action. Doing so would render superfluous the County Legislature's inclusion of that enumerated power within section 602. Stated another way, the power to commence a civil action cannot reasonably be "additional" or "related" to itself. Thus, the majority's reliance on section 602 is misplaced (*see Branford House*, 81 NY2d at 688).

Likewise, we are not persuaded by the reasoning in the case cited by the majority, *Matter of County of Rockland v Town of Clarkstown* (167 Misc 2d 367). In that case, the court relied on a provision in the Rockland County Charter that was substantially similar to section 602 of the Erie County Charter. Section C16.02 of the Rockland County Charter provides in relevant part that the "County Attorney shall be the legal advisor of the county and all county agencies on civil matters and shall prosecute or defend actions or proceedings of a civil nature brought by or against the county. *He shall have and exercise such other and related powers and duties as may be conferred or imposed upon him by law and perform such other related duties required by the County Executive or the Legislature*" (*County of Rockland*, 167 Misc 2d at 369). From that section, the court concluded that the Rockland County Executive "is empowered by the Rockland County Charter to authorize the County Attorney to commence civil litigation to enforce any of the duties and functions lawfully designated to the County Executive" (*id*. at 370). Based on the rules of statutory construction noted above, however, we conclude that the court made the same error of statutory construction made by the majority in this case.

Next, contrary to the view of the majority, Erie County Charter § 302 (m) does not require a different result. That provision gives the County Executive "all necessary incidental powers" to perform any of his enumerated duties or functions. We acknowledge that the "right to sue and be sued" has sometimes been included within the broad category of "incidental powers" (*New York City Tunnel Auth. v Consolidated Edison Co. of N.Y., Inc.*, 269 App Div 449, 453, *revd on other grounds*

295 NY 467, *rearg denied* 296 NY 745).  In this case, however, granting the broad power to commence litigation to the Erie County Executive without a resolution from the County Legislature based on Erie County Charter § 302 (m) still renders the language of section 602 superfluous.  Section 302 (m) cannot be read to empower the County Executive to authorize the County Attorney to perform the enumerated duty of commencing litigation when section 602 expressly limits the County Executive's direction over the County Attorney to performing "additional" or "related" duties.

The rules of statutory construction "require that, where it is possible to do so, the various parts of the statutory scheme be harmonized, reading and construing them together . . . , and reconciling the apparently conflicting provision in the manner most consistent with the overall legislative intent" (*Matter of Ador Realty, LLC v Division of Hous. & Community Renewal*, 25 AD3d 128, 134).  In our view, the Erie County Charter does not evince that the County Legislature intended to deviate from the rule set forth in the County Law that it, rather than the County Executive, may authorize the County Attorney to commence a civil action (*see* County Law § 501 [1]; *County of Sullivan*, 99 AD2d at 575; *see e.g. County of Niagara*, 48 AD3d at 1072).

Indeed, in describing the powers and duties of the County Legislature, Erie County Charter § 202 explicitly provides that "the county legislature shall have and exercise *all powers and duties of the county . . .*" (emphasis added).  It is well established that Erie County is a municipal corporation with the right to sue and be sued (*see* NY Const, art X, § 4; County Law § 3; *see generally Beneke v Town of Santa Clara*, 28 AD3d 998, 999).  Thus, consistent with the provisions of the County Law, the County Legislature clearly intended to grant itself the right to sue and be sued (*see generally Beneke*, 28 AD3d at 999; *County of Sullivan*, 99 AD2d at 575).

On the other hand, the powers and duties of the County Executive are more narrowly defined.  The County Executive's powers and duties are enumerated in Erie County Charter § 302.  Conspicuously absent from that list of powers and duties is a "catch-all" provision akin to the language identified above in section 202.  The County Legislature clearly knew how to empower a branch of the Erie County Government with "all powers and duties of the county" (§ 202), but chose not to bestow those powers on the County Executive.  Therefore, because it is undisputed in this case that the County Attorney acted only at the direction of the County Executive and without a resolution from the County Legislature, we would dismiss the first amended complaint on the ground that the County lacked the capacity to sue.

Even if we were to agree with the majority that sections 602 and 302 (m) empower the County Executive to authorize the County Attorney to commence a civil action, we nevertheless disagree with the majority's implicit conclusion that the power is so broad that the County Executive may authorize the County Attorney to commence the instant action against defendant.

That conclusion is not inconsistent with section 302 (m).  To be sure, to the extent that the County Executive possesses a specific duty or function by virtue of section 302, the Erie County Charter provides him with broad powers to exercise that duty or function (*see* § 302 [m]).  Here, however, the County's action against defendant involves matters outside the County Executive's enumerated duties.

The County Executive is "the chief executive officer and administrative head of the county government" (Erie County Charter § 302 [a]) and is "responsible for the exercise of all executive and administrative powers in relation to any and all functions of county government not otherwise specified in [the Erie County Charter]" (§ 302 [l]).  He or she shall also "appoint to serve . . . the head of every department and other administrative unit of the county" (§ 302 [b]) and "[s]upervise and direct the internal organization and reorganization of each department or other administrative unit the head of which he or she has power to appoint" (§ 302 [c]).  Notably, the Commissioner of Central Police Services (CPS) is appointed by and "shall serve at the pleasure of the county executive" (§ 1501).  The County Executive, therefore, has a supervisory role with respect to CPS.  The instant action, however, involves allegations of fraud against the *former* Commissioner of CPS.  In our view, it does not flow from the County Executive's power to supervise and direct CPS that the County Executive, without a resolution from the County Legislature, may authorize the County Attorney to commence a civil action against a former county employee who resigned before the County Executive took office.  Simply stated, this action falls outside the enumerated powers granted to the County Executive in section 302.

Consequently, this case is distinguishable from *County of Rockland*, on which the majority heavily relies.  Notwithstanding its threshold error in concluding that the Rockland County Executive had power to authorize the County Attorney to commence a civil action, the court in *County of Rockland* nevertheless pointedly recognized that any such power necessarily would be limited to matters that fell within the County Executive's enumerated duties (*see County of Rockland*, 167 Misc 2d at 370-371).  In that case, the Rockland County Executive was the "chief budget officer" and the lawsuit involved the County budget (*id.*).  The County of Rockland commenced separate proceedings against the Town of Clarkstown and the Town of Ramapo "to compel the subject Towns to add deficits caused by County revenue chargebacks to the Town's portion of each annual budget" (*id.* at 368).

In this case, even though the County Executive is the County's Chief Executive Officer and Chief Budget Officer (*see* Erie County Charter § 302 [a], [d]), the nexus between the fraud action commenced by the County and the County Executive's enumerated powers is far more tenuous than it was in *County of Rockland*.  Every decision by a county agency ultimately has some effect on a county's budget.  The four million dollars allegedly at issue in this action notwithstanding, the majority's holding today allows the County Executive to circumvent the County Legislature and direct the County Attorney to commence litigation for any decision that could have an impact on the County's budget, no matter how small.

Therefore, even if we were to accept the majority's position that the Erie County Charter empowers the County Executive to authorize the County Attorney to commence a civil action in some instances, we would nevertheless reach the conclusion that the County lacks the capacity to sue defendant herein.

Finally, we note that there is an alternate ground on which the fraud cause of action, the sole remaining cause of action in the first amended complaint, must be dismissed, albeit without prejudice. The operative allegations behind the County's fraud cause of action against defendant are based solely on "information and belief." For example, the County alleges that, "[u]pon information and belief, [defendant] was advised by New York State Homeland Security that the proposed contract with M/A-Com was unauthorized and illegal." It is well established that allegations based on "information and belief" are insufficient to support a fraud cause of action, which must be pleaded with particularity, unless "the source of such information [is] revealed" (*DDJ Mgt., LLC v Rhone Group L.L.C.*, 78 AD3d 442, 443; *see Angel v Bank of Tokyo-Mitsubishi, Ltd.*, 39 AD3d 368, 370; *see generally* CPLR 3016 [b]).

We do not dispute that defendant herein failed to raise this specific issue as a basis to dismiss the fraud cause of action, the sole remaining cause of action against him, and we agree with the proposition that " '[a]n appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute or overcome them had those theories or questions been presented in the court of first instance' " (*Ciesinski v Town of Aurora*, 202 AD2d 984, 985, quoting *Fresh Pond Rd. Assoc. v Estate of Schacht*, 120 AD2d 561, 561, *lv denied* 68 NY2d 802). Nevertheless, defendant moved to dismiss the first amended complaint for, inter alia, failure to state a cause of action alleging fraud and argued that the allegations of fraud made against him were too vague. In our view, defendant's challenge to the fraud cause of action necessarily encompasses the sufficiency of the allegations of that cause of action. We do not agree with the majority that the County should, in effect, be permitted to proceed on patently insufficient fraud allegations in the face of defendant's challenge to the sufficiency of those very allegations.

At the same time, we recognize that the County has never been given the opportunity to cure the deficiencies in its allegations and come forward with the source of the information on which its beliefs are based. We decline to offer an opinion whether the County will do so successfully, but we believe that it is incumbent on the County, at the pleading stage, "to disclose the sources of its information and belief and otherwise come forward with whatever evidence it has" concerning its allegations of fraud against defendant, and we also believe "that it should be given another opportunity to do so" (*Belco Petroleum Corp. v AIG Oil Rig*, 164 AD2d 583, 599). Therefore, even assuming, arguendo, that the County has the capacity to sue defendant, we would dismiss the fraud cause of action against him without prejudice to allow the County to replead its allegations of fraud. If the County cannot provide legally sufficient amended allegations of

fraud, then defendant will be able to challenge such allegations. This was the approach taken by the First Department in an analogous case, *Belco Petroleum Corp.* (164 AD2d at 598-599), and we see no reason not to employ it here.  We note that, to the extent that the County may encounter a statute of limitations issue upon further amending its complaint, CPLR 205 (a) would operate to save the claim from being time-barred.

For the reasons stated herein, we respectfully dissent and would modify the order by granting defendant's motion to dismiss the sole remaining cause of action against him based on the County's lack of capacity to sue and the County's failure to state a cause of action alleging fraud.

Entered:  March 15, 2013                          Frances E. Cafarell
                                                  Clerk of the Court