JOHN MIRRO and LIBERATO MIRRO, Claimants, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24173.)

Court of Claims, November 13, 1939.

*Jacob B. Gersten,* for the claimants.

*John J. Bennett, Jr., Attorney-General [Gerald J. Carey, Assistant Attorney-General,* of counsel], for the defendant.

RYAN, J.   Claimants are the owners of a plot of land located on the northeast corner of Central avenue and Seventy-eighth street in Queens in the city of New York.   The property is improved with a one-story brick garage building built in 1924.   The grades of Central avenue and of Seventy-eighth street had been established by the city on November 16, 1917, and the building was erected to conform to the existing grade.

Central avenue was eighty feet wide and was one of the main connecting public highways between the borough of Brooklyn and the borough of Queens.   It carried traffic going east and west. Seventy-eighth street entered Central avenue from the north but did not cross it.   It was a two-way street and carried traffic into Central avenue from the north and away from it to the south.

Pursuant to chapter 677 of the Laws of 1928, the transit commission authorized the elimination of the grade crossing of the Montauk division of the Long Island railroad at Central avenue and Proctor street which was west of the location of claimants' property. To effect the elimination an underpass was constructed and the center part of Central avenue was depressed.   The point of beginning of the depression is about 500 feet to the east of claimants' east property line.   In front of claimants' premises the difference in elevation is eleven feet, one inch.   A stairwell was dug through the public sidewalk on Seventy-eighth street near the southwest corner of claimants' building and a stairway constructed to afford pedestrians access to a tunnel and thence to a sidewalk on the depressed Central avenue.   A marginal road or surface street thirty feet wide, of which twenty feet was for vehicles and ten feet for a pedestrian sidewalk, was constructed in front of claimants' property at substantially the old grade of Seventy-eighth street, the new road being about six inches lower than the grade of Central avenue as it formerly existed.   This marginal road now carries vehicular traffic in a westerly direction only.   Directly opposite claimants' building and on the line of the division between the marginal road and the depressed road a concrete retaining wall projects approximately one foot above the roadway of the marginal street and is surmounted by a concrete guard wall or fence five feet high.   The photographs in evidence and the court's view of the premises establish that this structure interferes with light, air and access to claimants' property.   The claimants' value expert testified that he took into consideration the changes that have taken place in the street.   This is one of the changes.

No portion of claimants' property was taken.   The grade of Seventy-eighth street was not changed.   Access to claimants' property over the marginal road can now be had from the east.

One driving on Central avenue in an easterly direction must pass claimants' property, go to a point east of it and turn back in a westerly direction on the marginal road.

Some describe the alterations made as a " separation of grades." Call it what you will, the fact is the grade of Central avenue in front of claimants' property was changed. The physical aspects are similar to those described in *Buffalo Co-operative Stove Co.* v. *State* (252 App. Div. 228). If there was existing liability for such a change of grade at the time that chapter 677 of the Laws of 1928 took effect, then, we believe, that by application of the *Askey & Hager* decision to section 7 thereof, these claimants have a cause of action against the State of New York in the first instance. (*Askey & Hager, Inc.,* v. *State,* 240 App. Div. 451; affd., 266 N. Y. 587.)

Claimants assert that such a liability did exist by virtue of section 951 of the Greater New York Charter. As their claim is presented *de novo* a strong argument appears in support of their right to recover against the State. (*West 158th St. Garage Corp.* v. *State,* 256 App. Div. 401, 404.) In that case Mr. Justice HILL, presiding in the Third Department, pointed out that recent decisions of the Court of Appeals had fortified claimant's contention. The same is true here. And neither the reversal of our order reopening the *West 158th St. Garage Corp.* case because of lack of power and jurisdiction nor the inadvertent statement in the second paragraph of the opinion to the effect that the city raised the grade, can lessen the force of the court's declaration on the law of liability against the State. The record was clear that the State did the work.

But the defense here argues that to impose liability upon the State it must first be shown that the local governmental subdivision became responsible for the State's acts. We regard this as too narrow a construction of a statute which sought to preserve to property owners the limited remedies which existed for damages sustained by change of grade.

The point is that a liability existed because the language " but this provision shall not be deemed to create any liability not already existing in law " (Laws of 1928, chap. 677, § 7) must be construed to mean " that if there was a remedy available to such injured property owner at the time the act took effect, the State agrees to pay." (*Askey & Hager, Inc.,* v. *State, supra.*) It matters not, therefore, that under other provisions of the Greater New York Charter recovery is to be had from an assessment against the owners of property benefited, nor that the charter gives no cause of action against the city proper. (*People ex rel. Globe Constr. Co., Inc.,* v. *Ormond,* 181 App. Div. 242; *People ex rel. Crane* v. *Hahlo,* 228 N. Y. 309, 318.) Whatever liability there was continues and must now be borne by the State.

Without close scrutiny it may appear that *Lewis* v. *State* (258 N. Y. 568) is an authority holding against recovery herein. But it is to be distinguished because the maps of the improvement showed that a strip of the original grade of Tuckahoe road in the city of Yonkers in front of the Lewis property was to be preserved. Actually what was to be accomplished in the *Lewis* case was a diversion of the highway, beginning at a point east of the Lewis property, rather than a change of street grade where the property abutted. Although Tuckahoe road was to be blocked off at the west, access to the east over its unaltered surface was to remain, according to the engineer's plans.

Claimants are entitled to recover damages herein measured by the difference in the fair market value of their property before and after the physical changes were made. Accordingly, an award should be made.

BARRETT, P. J., concurs; GREENBERG, J., dissents with opinion, under date of December 27, 1939.

GREENBERG, J. (dissenting). Claimants herein seek to recover for damages to their property caused by a change of grade of Central avenue in the borough of Queens, city of New York. The facts have been succinctly stated in Judge RYAN's opinion, but I do not concur in the decision made by my learned colleagues that liability was imposed upon the State of New York for a change of grade affecting property located in the city of New York where said change of grade had been made by the State pursuant to chapter 677 of the Laws of 1928.

I am in accord with the statement in the opinion, " if there was existing liability for such a change of grade at the time that chapter 677 of the Laws of 1928 took effect then, we believe, that by application of the *Askey & Hager* decision to section 7 thereof, these claimants have a cause of action against the State of New York in the first instance. (*Askey & Hager, Inc.*, v. *State*, 240 App. Div. 451; affd., 266 N. Y. 587.)" But the application of the *Askey & Hager* case (*supra*) and the decision in *Knights* v. *State* (161 Misc. 147; affd., 251 App. Div. 781; affd., 275 N. Y. 650) are limited by the provisions contained in the act creating the Buffalo grade crossing commission, and likewise section 159 of the Village Law.

The *Askey & Hager* case arose in the city of Buffalo. The order for the elimination involved therein had originally been made by the Buffalo grade crossing and terminal station commission, created by chapter 231 of the Laws of 1923, which act had been in effect prior to the General Grade Crossing Elimination Acts. The act which created the Buffalo grade crossing commission provided

**for** damages for change of grade; it likewise provided that the Buffalo grade crossing commission was an *agency of the city of Buffalo,* and the liability for the acts of the commission was placed upon the city of Buffalo.

The work of the elimination involved in the *Askey & Hager* case (*supra*) which was being performed by the city of Buffalo, had progressed to a point where the grade had actually been changed by the city of Buffalo. At this stage of the proceedings the Public Service Commission made an order pursuant to chapter 844 of the Laws of 1926, wherein the State took over the work of the elimination. At this time the damage had actually been sustained by the claimant and the claimant had a cause of action against the city of Buffalo for the damage which it had caused. It was this damage for which the State became liable in the first instance pursuant to chapter 844 of the Laws of 1926 and for which the claimant recovered against the State.

Likewise, in the *Knights* case (*supra*) there was an existing liability against the village by reason of the provisions of section 159 of the Village Law. Subdivision 2 of that section provided that the village would be liable for change of grade made in the village irrespective of who made the change and pursuant to the provisions of this act a liability was placed upon the village for the acts of the State. It was this liability for which the State became liable in the first instance. So under these decisions I am in accord with the quoted statement made by my colleagues.

However, I must differ with that portion of the opinion which reads, " The point is that a liability existed because the language ' but this provision shall not be deemed to create any liability not already existing in law ' (Laws of 1928, chap. 677, § 7) must be construed to mean ' that if there was a remedy available to such injured property owner at the time the act took effect, the State agrees to pay.' (*Askey & Hager, Inc.,* v. *State, supra.*) It matters not, therefore, that under other provisions of the Greater New York Charter recovery is to be had from an assessment against the owners of property benefited, *nor that the charter gives no cause of action against the city proper.*" (Italics supplied.) If section 951 of the Greater New York Charter gave the claimant no cause of action against the city proper, there could be no existing liability for which the State could become liable in the first instance under chapter 677 of the Laws of 1928, for under this section the State became liable in the first instance for only such damage as could be recovered against the city.

The statute imposing liability for change of grade must always be strictly construed. I am of the opinion that had the Legis-

lature intended to give claimant the right to recover damages herein, it would have done so in certain terms and not indirectly or inferentially. The court cannot substitute its interpretation of the language of the statute where the statute is clear and specific.

One important difference between the statute involved in the *Askey & Hager* case (*supra*) and the present claim, must be borne in mind in deciding this matter. Chapter 844 of the Laws of 1926, which was the section involved in the *Askey & Hager* case (*supra*), read as follows: " If the work of such elimination causes damage to property not acquired as above provided, the State shall be liable therefor in the first instance, but this provision shall not be deemed to create any cause of action which would not otherwise exist." It was this section which the court interpreted to mean that where a remedy existed it could not be destroyed by the acts of the State. However, the language involved in chapter 677 of the Laws of 1928 differs considerably from the language in the statute involved in the *Askey & Hager* case (*supra*). Section 7 of chapter 677 of the Laws of 1928 reads as follows: " If the work of such elimination causes damage to property not acquired as above provided, the State shall be liable therefor in the first instance, but this provision shall not be deemed to create any liability not already existing in law." The test that must be applied in the instant claim is not whether there was a cause of action, but, rather, was there a liability existing at law. Accordingly, if section 951 of the Greater New York Charter created no liability, or, as stated in the decision of my colleagues, no cause of action against the city for the work performed by the State, there could be no liability existing at law for which the State could become liable in the first instance. Any liability the State assumed would have to be a liability placed on the city of New York by the acts of the State in the construction of the elimination.

The controlling feature in the *Askey & Hager* case (*supra*) and in *Buffalo Co-operative Stove Co.* v. *State* (252 App. Div. 228) was the fact that the city of Buffalo actually had ordered and participated in the work. This is clearly emphasized in the *Buffalo Co-operative Stove Co.* case (*supra*). On page 231 of the opinion the court states, " The Buffalo Grade Crossing and Terminal Station Commission was created by chapter 231 of the Laws of 1923, on consolidation of the Terminal Station Commission and the Grade Crossing Commissioners, *as an agency of the city of Buffalo* to effect the elimination of grade crossings within that city and continued as the agent of the city until the effective date of chapter 679 of the Laws of 1928, when it became the agent of the State of New York. It directed the alteration of the grade in Amherst street in connection with the elimination of these crossings as the *agent of the city* and

the city was liable for damages thereby caused, by reason of the provisions of section 367 of the Buffalo City Charter." (Italics supplied.)

The efficacy of the dictum in the opinion of the court in *West 158th Street Garage Corp.* v. *State* (256 App. Div. 401) as a controlling authority in the instant claim, has been destroyed because the facts were not clearly brought home to the court in that particular case. The court, in its opinion, in reciting the facts, states that the work of the elimination had been performed by the city. This is evidently an error for in the *West 158th Street Garage Corp.* case the work had been performed by the State, and if the appellate court proceeded on the assumption that the work had been performed by the city, the facts would clearly be within the scope of the *Askey & Hager* and the *Buffalo Co-operative* cases (*supra*), for then there would be a liability on the city. In the *West 158th Street Garage Corp.* case, and in the instant case, the city had no part in either ordering the elimination or in performing the work thereof, and hence, could not be made liable by reason of some act of its own. The liability would have to be found in the construction of section 951 of the Greater New York Charter, but this section has been repeatedly interpreted to impose no liability on the city where the work of changing the grade is performed by some agency other than the city. (*Matter of Bergmann,* N. Y. L. J. Sept. 26, 1936, p. 867; *Matter of Johnson,* Id. Jan. 5, 1939, p. 51; Id. Dec. 9, 1938, p. 2053.)

Furthermore, an award cannot be sustained herein upon the theory that the fence protecting the underpass interfered with the light, air and access to the claimant's property. The structure erected herein differs from the structure described in *Buffalo Co-operative Stove Co.* v. *State* (*supra*). The structure in this case was erected solely for the use and protection of the traveling public, and hence any damages sustained thereby were not recoverable. (*Sauer* v. *City of New York,* 206 U. S. 536.) The structure described in *Buffalo Co-operative Stove Co.* v. *State* (*supra*) was designed solely for the use and benefit of the railroad, and hence the type of structure upon which a recovery could be predicated under the decision in *Storey* v. *New York Elevated R. R. Co.* (90 N. Y. 122). Likewise, all of the experts in the instant claim agreed that the fence was not the cause of damage to the property, but that the resultant loss in value was caused solely by the diversion of traffic through the underpass, and, accordingly, there is no evidence before the court upon which an award could be based for any damages arising out of the construction of the fence and retaining wall if such damages were legally recoverable.

Accordingly, I dissent from the opinion herein and vote for a dismissal of the claim.