SOLKAT REALTY CORPORATION, Claimant, *v.* THE STATE OF NEW YORK, Defendant.
(Claim No. 24578.)

Court of Claims, December 28, 1939.

*Greene & Greene [Joseph E. Rizzo* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General [Joseph I. Butler, Assistant Attorney-General,* of counsel], for the defendant.

*John W. Walrath,* for the Syracuse Grade Crossing Commission.

*Cowie, Bruce & Lee [Maurice F. Lane* of counsel], for the New York Central Railroad Company.

*MacKenzie, Smith & Michell [M. J. Allen* of counsel], for the Delaware, Lackawanna and Western Railroad Company and the Syracuse, Binghamton and New York Railroad Company.

RYAN, J.   Claimant corporation owned lands abutting on South Geddes street in the city of Syracuse.   The property had a frontage

of 142 feet on the west side of South Geddes street in the block between West Fayette street on the south and Erie boulevard on the north. Within the block and to the south of claimant's property was the right of way of the Delaware, Lackawanna and Western railroad and to the north the right of way of the New York Central. Both of these railroads crossed Geddes street at grade.

In the elimination of these grade crossings the 100-foot width of Geddes street was reduced to fifty feet, consisting of a forty-foot pavement and a five-foot sidewalk on either side. This fifty feet was depressed and carried under the railroad tracks, which had been elevated about four feet. On the remaining fifty feet of the original Geddes street were built concrete retaining walls. On the westerly side a sixteen-foot roadway was constructed extending north from West Fayette street, past claimant's property, to the New York Central right of way, where it was dead-ended. This roadway is sixteen feet wide from West Fayette street to the Delaware, Lackawanna and Western tracks, which it approaches by a ten and eight-tenths per cent ascending grade. After crossing the tracks the remainder of the roadway is twenty feet wide. The only access to and from claimant's property is over this elevated roadway. Claimant no longer has direct access to Geddes street.

The original plan for the elimination of the South Geddes street crossing was adopted by the Syracuse grade crossing commission and was submitted by it to the common council of the city of Syracuse and approved by that body on February 18, 1935. Thereafter the plan was submitted to the Public Service Commission and, after modification, was approved by that body on November 26, 1935. However, the construction work attendant upon the grade crossing elimination was not carried out by the Syracuse grade crossing commission. Instead, it was accomplished under the direction of the State Superintendent of Public Works through a contract which he made with the Walsh Construction Company. The expense was not borne out of money raised for grade crossing eliminations by the State bond issue but was met out of Federal money allocated to the State of New York under the Federal Emergency Appropriation Act of 1935 and received and expended by the State Comptroller pursuant to chapter 934 of the Laws of 1935. Before the Superintendent of Public Works entered into the contract with the Walsh Construction Company the Syracuse grade crossing commission, on March 11, 1936, adopted a resolution reciting in substance that whereas Federal moneys had been allocated to the city of Syracuse for the elimination of the Geddes street crossing, and whereas plans for carrying out the work had been

submitted to the Department of Public Works for its approval, and whereas under the provisions of chapters 303, 585, 934 and 935 of the Laws of 1935 and chapter 782 of the Laws of 1933, it is proposed, and the Department of Public Works asserts its rights to advertise for bids, let contracts, supervise the work and pay the cost of the work by its vouchers on the State Comptroller, therefore, in view of the statutes and the provisions of the Emergency Relief Appropriation Act, it was resolved that the Syracuse commission recognizes the right of the Department of Public Works to eliminate the said Geddes street crossing in accordance with plans hereinbefore prepared by the Syracuse commission and the commission waives its right to do the work in connection with that project, and consents that payment therefor be made by the Comptroller on vouchers of the Department of Public Works. It was further resolved that any and all lands and easement rights required to carry out the project shall be acquired by the Syracuse commission under chapter 825 of the Laws of 1928.

After the completion of the work the same was approved by the Public Service Commission under date of December 7, 1937. The order of approval recited that it appeared from an inspection made by a representative of the engineering division of the commission that the work had been completed substantially in accordance with the Commission's order and approved plans, and referred to the order of November 26, 1935, which directed the elimination.

However, in the execution of the work the Department of Public Works prepared its own detail plans. There is testimony in the record to the effect that the contract plans were new plans and not merely detailed changes and modifications of the original plans prepared and adopted by the Syracuse grade crossing commission. It seems to us, however, that the plans were substantially as originally prepared and that it was the contemplation of all the agencies and commissions concerned that the work was to be done in accordance with the plan of the Syracuse commission.

In an action brought in the Supreme Court, Onondaga county, by the Atlantic Refining Company against the Syracuse grade crossing commission and the interested railroads and Frederick Stuart Greene as the State Superintendent of Public Works and the Walsh Construction Company, the plaintiff sought to restrain the Superintendent of Public Works and the contractor from proceeding with this South Geddes street elimination. The Atlantic Refining Company was the owner of the parcel of land situated at the southeast corner of the intersection of South Geddes and West Fayette streets.

The matter came before Mr. Justice Dowling, of the Fifth Judicial District, at Special Term on motion of the defendant Greene, the State Superintendent of Public Works, and the defendant Walsh Construction Company, the contractor, for summary judgment on the pleadings. In granting the motion to dismiss the complaint, the court ruled that the plaintiff had not resorted to the legal remedies available to it and that until it had exhausted them, a court of equity would not entertain jurisdiction. In the memorandum of decision handed down July 9, 1937 (unreported), the court said:

"It is apparent from the provisions of chapter 825, Laws of 1928, chapter 782, Laws of 1933, chapter 303, Laws of 1935, chapter 585, Laws of 1935, chapter 934, Laws of 1935, and chapter 935, Laws of 1935, section 99 of the Second Class Cities Law does not apply in respect to change of grade of streets involved in the elimination of grade crossings in Syracuse. The Syracuse commission is authorized and empowered by chapter 825 of the Laws of 1928 to change the grade of streets whenever necessary. The Syracuse commission's powers to do so have not been affected by any of the statutes enacted since 1928 by the Legislature of the State of New York. These subsequent statutes empowered the Superintendent of Public Works of the State of New York to take over the supervision and management of the grade crossing elimination project in Syracuse in conjunction with the Syracuse commission, and it was in pursuance of this power that the defendant Greene revised the plans of the Syracuse commission relative to the grade of South Geddes and West Fayette streets, adjacent to plaintiff's property. In changing the plans and letting the contract to do the work, defendant Greene was acting for the State itself. The State had power to impose this duty on the Department of Public Works as a State agency. It simply transferred this part of the undertaking from the Syracuse commission, which is a State agency, to another State agency in order that it might confer a benefit upon the parties involved in the elimination project by procuring Federal funds to aid in defraying the cost of the work. This was a worthy object and well within the power of the State.

"The original plan of the Syracuse commission was subject to the approval of the common council of the city of Syracuse. Any change in the details of the plan thereafter made was not subject to the approval of the common council. The plans of the department of public works of the State were not subject to the approval of the common council of the city of Syracuse or of the Public Service Commission since they involved only changes in detail of the plans of the Syracuse commission which had received the approval of the

Public Service Commission and of the railroads involved in the elimination project. (Chap. 938, Laws of 1935.)

" Chapter 825 of the Laws of 1928 specifies that all damages suffered by reason of the elimination project, whether through change of grade or otherwise, are to be paid as follows: Forty per cent by the State, ten per cent by the county of Onondaga, fifty per cent by the railroads involved in the elimination project. Claims for damages may be made to the Syracuse commission and the railroads involved in the project. If agreement as to the amount of damages is reached, the State will pay on certificate of the Syracuse commission the amount agreed upon and then assess the county and railroads their share thereof. If damages have been awarded in a condemnation proceeding by the railroads or the commission, the State will pay the amount upon the certificate of the Attorney-General and assess the county and railroads their share thereof. In case resort has not been had to condemnation or to the Syracuse commission to have the damages fixed, the injured party may file a claim with the Court of Claims of the State of New York, at any time within six months after the work has finally been accepted by the Public Service Commission. The Court of Claims is authorized to hear the claim, and if a legal and just one, to render judgment awarding damages to the claimant. In case judgment is awarded, the State will pay the judgment on the certificate of the Attorney-General and assess the county of Onondaga and railroads for their share thereof."

We adopt the reasoning of Mr. Justice Dowling and hold that we have jurisdiction to make an award therein if claimant has established that its claim is a legal and just one. We believe that it has.

Under the statute creating it, Laws of 1928, chapter 825, the Syracuse grade crossing commission has power to purchase and condemn property and to direct the work of construction. Section 9 thereof provided that " If the work of such elimination causes damages to property not acquired as above provided [by purchase or condemnation], the State shall be liable therefor in the first instance, but this provision shall not be deemed to create any liability not already existing in law." This has been held to mean that damages are recoverable where access to property has been completely cut off (*Champion Oil Co., Inc.*, v. *State*, 161 Misc. 143; affd., 251 App. Div. 781), also where easements of light, air and access have been interfered with. (*Caldwell & Ward Brass Co.* v. *State*, 161 Misc. 147; affd., 251 App. Div. 781; affd., 277 N. Y. 547; *Harrison* v. *New York Central R. R. Co.*, 255 App. Div. 183; affd., 281 N. Y. 653.)

In this case we believe existing liability is to be found in section 99 of the Second Class Cities Law. While we have just quoted Mr. Justice DOWLING to the effect that this section " does not apply in respect to change of grade of streets involved in the elimination of grade crossings in Syracuse," we interpret his statement to mean that the authority of the common council to effect changes of grade has been transferred to the Syracuse grade crossing commission. The liability, however, has not been extinguished but has been preserved. And the State has assumed it.

It may be argued that *Lewis* v. *State* (258 N. Y. 568) is an authority to the contrary. The *Lewis* case, which arose in the city of Yonkers, is to be distinguished from the instant case on the physical changes effected by the construction. The claimants' property had a frontage of 325 feet on Tuckahoe road. In eliminating the grade crossing the State changed the direction of Tuckahoe road, diverting it to the north. A new road was constructed which began at a point in the old road easterly of claimants' east property line and ran westerly on an embankment to a bridge over the railroad tracks. Tuckahoe road was closed at a point west of claimants' west property line. Access from the east remained and the maps of the improvement showed that there was a strip of the original grade of Tuckahoe road preserved in front of claimants' property.

As we have indicated elsewhere (*West 158th Street Garage Corp.* v. *State,* 168 Misc. 823, 829), this was not a change of grade in the street upon which the Lewis property abutted. Rather it was a diversion of that street rendering the property less accessible. Here the former grade of Geddes street has been destroyed and claimant has no way of getting into the new depressed street except by proceeding down the ramp and into West Fayette street.

In *Buffalo Co-operative Stove Co.* v. *State* (252 App. Div. 228) claimants' property was situated at the northeast corner of the intersection of Amherst and Tonawanda streets in the city of Buffalo. It had a frontage of 290 feet on the northerly side of Amherst street which street was closed at a point west of its intersection with Tonawanda street. The grade of the southerly fifteen feet of Amherst street, for a distance of 137 feet opposite the westerly half of claimant's property, was lowered in connecting Amherst street with the new subway. The grade of the northerly thirty-six feet of Amherst street, in front of the westerly half of claimant's property, was not changed. The practical effect of the changes was to divert Amherst street through the subway and leave claimant's property abutting upon a public street, of sufficient but lessened width, over which claimant had access from the east.

Mr. Justice TAYLOR, writing in the Fourth Department, said that claimant was entitled to damages for any injuries to its property resulting from the change of grade in Amherst street, holding that chapter 844 of the Laws of 1926, while not creating any new remedy against the State, did not destroy the remedy that existed under the provisions of section 367 of the Buffalo City Charter.

So here, we believe, no new remedy has been created by chapter 825 of the Laws of 1928 but neither has that which existed under section 99 of the Second Class Cities Law been destroyed. We think that the demand made by claimant is a legal and just one and that the damages it has sustained are recoverable.

It would seem, moreover, that the claimant has shown a right to recover under the " ancient streets " doctrine. But we do not so decide. In this connection see *Dwornik* v. *State* (251 App. Div. 675).

Claimant has established ownership of the fee of 19,724 square feet of land abutting on Geddes street as stated. Claimant also used and occupied in connection with this tract an additional 9,200 square feet in the rear. For its ownership to this last named parcel claimant relies on a quitclaim deed given to Solomon Katz, February 5, 1919, and duly recorded March 18, 1919, and upon the adverse possession of his grantors from 1906. It appears that there is on record a deed dated August 12, 1858, whereby this same parcel was conveyed to the Syracuse, Binghamton and New York railroad, which corporation has not since that time transferred any portion thereof.

In our decision we make separate awards for the damages to the two parcels of land. If claimant is unable to establish its title to the second parcel and right to the award therefor, to the satisfaction of the State's title bureau, resort may be had to the provisions of section 22 of the Court of Claims Act. Thereunder, application may be made for a direction that the Comptroller deposit the amount awarded to be paid and distributed as the Supreme Court may order.

FRED M. ACKERSON, official referee, acting as judge, concurs.