EVERETT D. COOK, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 24017.)

Court of Claims, July 31, 1941.

*C. Leonard O'Connor*, for the claimant.

*John J. Bennett, Jr., Attorney-General [James H. Glavin, Jr., Assistant Attorney-General*, of counsel], for the defendant.

*Sayles, Flannery, Collin & Evans [Rowland L. Davis, Jr.*, of counsel], for the Delaware, Lackawanna and Western Railroad Company.

*Meagher & Meagher [Frederick J. Meagher* and *Jefferson F. Meagher* of counsel], for the Erie Railroad Company.

BARRETT, P. J. This claim is for damages arising out of the elimination of the grade crossing on Prospect avenue in the city of Binghamton. Decision herein has been withheld pending the final determination in the claim of *Mirro v. State of New York* (285 N. Y. 678), hereinafter referred to and which case was decided by the Court of Appeals in April, 1941. The premises affected, no part of which was taken, are located on the southwest corner of Eldredge street and Prospect avenue and also abut on State street. Prospect avenue runs generally north and south, Eldredge street runs generally east and west and State street runs generally north and south. In 1922 the claimant built a one-story brick building and basement on this parcel of land in conformity with the grade of the street.

The tracks of the Delaware, Lackawanna and Western Railroad Company and the Erie Railroad Company crossed Prospect avenue at grade, south of the claimant's premises. During the elimination of this crossing, changes were made in Prospect avenue and in Eldredge street to construct a suitable connection between Prospect avenue and State street north of the crossing at Eldredge street. The grade of Eldredge street was reduced from eleven per cent to four and one-half per cent. By reason of this change of grade, Prospect avenue was closed by a wall at the point of intersection with Eldredge street, its center line was relocated thirty feet to the east, and a wall was built along the easterly line of the old Prospect avenue road. The new thirty-foot roadway was depressed to a five and one-half per cent grade. The surface of the old Prospect avenue road in front of claimant's premises, which was at a grade of one per cent, was not changed in grade. The surface of Prospect avenue as relocated is six feet lower, at its center line, at a point opposite the claimant's north property

line, than the grade of Prospect avenue prior to the grade crossing elimination. These changes have rendered the claimant's premises less accessible on Prospect avenue but have improved vehicular travel on Eldredge street.

The claim, filed pursuant to chapter 233 of the Laws of 1926, was amended to include filing pursuant to said act. or chapter 678 of the Laws of 1928. The orders of elimination made by the Public Service Commission were made pursuant to chapter 233 of the Laws of 1926. Whether the claim is regarded as filed under the Laws of 1926 or 1928, the Court of Claims has jurisdiction herein. (Laws of 1926, chap. 233, § 5.) In fact, it seems quite clear that the 1926 statute prevails because section 12 of chapter 678 of the Laws of 1928 provides in substance that its provisions do not affect a pending proceeding whether or not the work has been commenced. (*Buffalo Co-operative Stove Company* v. *State of New York*, 252 App. Div. 228.)

The claim is disputed upon the ground that the damages caused by the change of grade herein are *damnum absque injuria,* and that there is no applicable statute imposing liability. (*Sauer* v. *City of New York*, 180 N. Y. 27; affd., 206 U S. 536.) It is also claimed that assuming that the State is liable for damages caused by a change of grade, claimant has failed to prove that the grades of Eldredge street and Prospect avenue were legally established within the provisions of section 99 of the Second Class Cities Law. Since the claim was submitted, it was held that where in the elimination of a grade crossing, the grade of a street in the city of New York is changed, causing damages to an abutting owner, there is a liability existing in law under section 951 of the Greater New York Charter, which liability has been assumed by the State. It has also been held that under section 99 of the Second Class Cities Law, such liability has been preserved. (*Solkat Realty Corp.* v. *State of New York*, 172 Misc. 981.)

Section 99 of the Second Class Cities Law, in so far as it is relevant, provides as follows:

" § 99. Alteration of grades and names of streets. The grade of any street shall not be fixed or established except by direction of the common council. The grade of a street heretofore or hereafter legally established shall not be changed, except by direction of the common council, and except also upon compensation for damages done, to be ascertained in and by the proceedings provided by law for ascertaining damages for lands taken for the opening of streets."

Under this section, it is contended that the words " legally established " refer only to a grade established by an ordinance of the common council. In *Folmsbee* v. *City of Amsterdam* (142

N. Y. 118) where section 95 of the Charter of the city of Amsterdam provided that " When the grade of a street has been established," the grade should not be changed unless compensation was provided for the damages caused thereby, it was said: " It is said, however, on the part of the defendant, that the grade of this street had never been previously established, and, therefore, that this was not a case of a change of grade. We think, upon the undisputed facts in this case, that the grade of the street had become established. It had been used as a public street for more than forty years. Houses were built compactly on both sides, conforming to the grade of the street as it then existed, and the street was graded and improved by the city and its predecessor, the village of Amsterdam. Sidewalks had been built under direction of the municipal authorities upon grades given by them, and thus it is clear that the grade had become established by long usage, and by the acquiescence and recognition of the village and the city. The claim that the grade of a street could become established within the meaning of the statute under consideration only by a formal ordinance of the municipality finds no sanction in the language used. There are many streets in cities and villages the grades of which have not been established by ordinances. They have either been left in their natural condition or worked and improved from time to time by the municipal authorities without the formal establishment of any definite grade; and when upon such streets buildings are erected conforming to the existing grade, if that grade be changed, the mischief arises for which the provision in section 95 was intended to provide. Without referring minutely to the evidence in this case, we think sufficient appears to show that the grade had become established prior to 1887 when the defendant caused the change of the grade of which the plaintiff complains. There are precedents for the conclusion that the grade of a street may become established by usage, acquiescence and recognition without any formal ordinance on the part of the municipality. [*McCall* v. *Village of Saratoga Springs*, 29 N. Y. St. Repr. 699; *Bartlett* v. *Village of Tarrytown*, 55 Hun, 492; 30 N. Y. St. Repr. 341; *O'Reilley* v. *City of Kingston*, 114 N. Y. 439; *Whitmore* v. *Village of Tarrytown*, 137 id. 409.] Therefore, as there was no petition for changing the grade of this street as required by the section of the statute referred to, the defendant was wholly without authority to inaugurate the change, and its interference with the street was wrongful and illegal, and it became responsible to the plaintiff for any damages thereby caused to his property  *  *  *.''

To the same effect are *Matter of Hunt* v. *Village of Otego* (100 App. Div. 158); *Bernstein* v. *City of Mount Vernon* (109 id. 899); *Lawrence* v. *City of Corning* (140 id, 720). In *Matter of Greer*

(39 App. Div. 22), where compensation was sought under section 159 of the Village Law for damages caused by a change of grade of a street, and which section provided for such compensation for any change in grade, it was held that damages were recoverable whether such grade was from a natural grade or from a grade established by a resolution of the duly authorized authorities. In *Bernhard* v. *City of Rochester* (127 App Div. 875; affd., 194 N. Y. 566) the statute provided that the common council shall not " change the grade of any street which has been legally established," except upon compensation being made. At page 880 it was said: " The previous grade of the street had been fully established by user (*Folmsbee* v. *City of Amsterdam*, 142 N. Y. 118, 124); sidewalks had been laid and the street had been maintained at a grade and residences had been erected with reference to the same, and the defendant had long acquiesced in recognizing the existing grade, and an ordinance fixing it was unnecessary."

The statute considered in *Bernhard* v. *City of Rochester* (*supra*) was incorporated in substantially the same form in section 99 of chapter 473 of the Laws of 1906, being the former Second Class Cities Law which then read as follows: " The common council shall not change the grade of any street which has been legally established, except by ordinance of the common council, and except also upon compensation for damages done, to be ascertained in and by the proceedings provided by law for ascertaining damages for lands taken for the opening of streets."

By section 1 of chapter 52 of the Laws of 1917, section 99 was amended to read as follows: " The grade of any street shall not be fixed or established except by direction of the common council. The grade of a street heretofore or hereafter legally established shall not be changed, except by direction of the common council, and except also upon compensation for damages done, to be ascertained in and by proceedings provided by law for ascertaining damages for lands taken for the opening of streets." This section, as a bill, was introduced by Senator Fearon on January 30, 1917. Apparently the bill as first introduced read as follows (the portions in parenthesis have been inserted by the writer and are intended to show more clearly the changes made in the section: " The grade of any street shall not be fixed or established except by ordinance (direction) of the common council. The grade of a street so fixed (heretofore or hereafter legally established) shall not be changed, * * *." (1 Assembly Journal [1917] at pp. 123, 269 and 394.)

The substitution of the " heretofore or hereafter legally established " in lieu of the phrase " so fixed," which referred to the ordinance of the common council, clearly indicated an intention to grant damages for a change of grade established prior to 1917,

the date of the adoption of the amendment, in the manner in which a grade might be established prior to 1917. Before section 99 of the Second Class Cities Law was thus amended owners of property were entitled to compensation for damages for change of grade whether or not the grade had been established by the common council. The section as amended in 1917 clearly continued this right of compensation for a change of a grade theretofore established.

A paragraph in section 169 of chapter 751 of the Laws of 1907 provides that the common council " shall, by ordinance, establish " grades in the city of Binghamton. Such provision does not prevent the establishment of a grade by user, acquiescence or recognition. It merely authorized the common council to establish grades of streets. It does not prohibit expressly or by implication the establishment of grades by user, acquiescence or recognition. In the above-cited authorities, officers of the municipalities involved had authority to establish grades by ordinances but the courts invariably held that such provisions did not forbid the fixing of a grade by user, acquiescence or recognition. Here, it has been proved that the grades of said streets were so established for a period of over thirty years prior to the grade crossing elimination project. Before that time, the streets were paved, sewers were installed, sidewalks laid and buildings were built flush with the streets and in conformity with the grade and the streets were apparently public streets in 1875 and prior thereto. Within the authorities cited above, the grades of Eldredge street and Prospect avenue were established prior to 1917.

A resolution of the common council of Binghamton, adopted May 21, 1872, establishing grades of the two streets in question, was offered and received in evidence, as was also a resolution of the street commissioners of the city, dated June 7, 1898, requesting the city engineer to establish a change of grade on Eldredge street. There is no proof that the resolution of the common council was approved by the mayor, in accordance with sections 10 and 3 of title 4 of chapter 291 of the Laws of 1867, said chapter being the Charter of the city of Binghamton, in effect at the time the resolution was adopted. Its admission as evidence was proper upon the question as to whether Eldredge street and Prospect avenue were public streets with grades established by user, acquiescence and recognition, but it may not be regarded as establishing the grade of the streets because of its failure to receive the approval of the mayor. (*People ex rel. Ennis* v. *Schroeder*, 76 N. Y. 160.) As to the resolution of the street commissioners, by section 22 of chapter 858 of the Laws of 1895, which was an act to amend the Revised Charter of the city of Binghamton and in effect at the time of the adoption of the resolution, it was required that a change

of grade must be made by the city engineer to become effective only with the approval of at least three members of the board of street commissioners and a two-thirds vote of all members elected to the common council. Such approval has not been established and it, therefore, appears that claimant has failed to prove the establishment of said grades by orders of the common council but has, as before pointed out, proved that the grades were established by user, acquiescence and recognition. Upon this question, the exhibits were properly admitted in evidence.

Claimant is entitled to compensation for the damages sustained by reason of the change in grade of Eldredge street and the changes made in Prospect avenue as a result of the change of grade of Eldredge street. The change of grade of Eldredge street made necessary the changes in Prospect avenue and the damages sustained by claimant are directly and necessarily attributable to the change of grade of Eldredge street. In fact, the whole project arose out of the effort to improve Eldredge street. There is a wide variance of opinion as to the damages sustained, the testimony of claimant's witnesses· being that the damages were $8,714 to $14,000, while the State's witnesses testified that no damages were caused by the work. After a careful consideration of the testimony and after viewing the property, I am satisfied that claimant is entitled to an award in the sum of $3,000, in accordance with the accompanying decision, with interest from November 1, 1934, the date of the completion of the work.

RYAN, J., concurs, with opinion.

RYAN, J. (concurring). It has been held that where the State, in eliminating a grade crossing, changes the grade of a street in New York city it must respond in damages to an abutting owner whose property has been injured because section 951 of the Greater New York Charter supplies a liability already existing in law which the State has assumed by section 7 of chapter 677 of the Laws of 1928 (the New York city act). (*Mirro* v. *State of New York,* 285 N. Y. 678, affg. 260 App. Div. 525, affg. 172 Misc. 963.)

It has been held that the liability for damages for change of grade imposed upon cities by section 99 of the Second Class Cities Law has not been extinguished but has been preserved and that this is a liability already existing in law which the State has assumed by section 9 of chapter 825 of the Laws of 1928 (the Syracuse act).*

---

* Syracuse. although having a population in excess of 175,000 in 1925, was regarded as a second class city. (See Second Class Cities Law, § 4; State Const. former art. XII, § 2, as amd. 1923, now art. IX, § 11; Op. Atty.-Gen. 1932, 45 St. Dept. Rep. 470.)

(*Solkat Realty Corp.* v. *State of New York*, 172 Misc. 981; affd., 262 App. Div. 944.)

It is now proposed to hold that the liability for damages for change of grade imposed upon cities by section 99 of the Second Class Cities Law is a liability already existing in law which the State has assumed by section 6 of chapter 678 of the Laws of 1928 (the general act).

In the *Mirro* case the " grades of Central avenue and of Seventy-eighth street had been established by the city of New York on November 16, 1917, and the building had been erected to conform to the then existing grade." Section 951 of the Greater New York Charter provided for damages to an abutting owner who had " built upon or otherwise improved his property in conformity with the grade of any street or avenue established by *legal authority.*" (Italics mine.)

In the record of the *Solkat* case it does not appear in what manner the grade of South Geddes street became established but the trial seems to have proceeded upon the theory that it had been legally established and that the claimant's buildings and improvements conformed to it.

It is now proposed to hold that the words " *legally established,*" appearing in section 99 of the Second Class Cities Law, include the establishment of the grade of a city street by " user, recognition and acquiescence for a period in excess of thirty years."

It is now proposed to hold that the first sentence of section 99 of the Second Class Cities Law, viz., " The grade of any street shall not be fixed or established except by direction of the common council," does not limit the application of the sentence immediately succeeding it which provides for compensation when a street grade is changed. Moreover, it is proposed to hold that this provision for compensation, contained in the said second sentence, inures to the benefit of the owner of property abutting on a street, the grade of which has been established by user, recognition and acquiescence, when that grade is changed *not* by the city but by the *State of New York*. To so hold means to disregard the words " *except by direction of the common council* " and the word " *also* " as they appear in the second sentence. To so hold means to say that when the State directs the change of grade it assumes the liability which would be the city's if the city did the work.

In these proposed holdings I concur. I do so with full appreciation that the mandate of section 99 of the Second Class Cities Law is not as forceful as that of section 951 of the Greater New York Charter. The latter is now interpreted to have " created liability whenever for any purpose an established grade is changed

so as to interfere with adjacent buildings " and " The State in elimination projects is liable in the first instance therefor " (*Mirro* v. *State of New York, supra* [HILL, P. J., 3d Dept.].) At the same time, the liability provided by section 99 of the Second Class Cities Law is less restricted than that provided by the Elmira City Charter (Laws of 1906, chap. 477, § 80) " which applies only when the common council intends to take property and has declared ' by resolution its intention.' " And we are concurrently holding that the force of the affirmances in the *Mirro* and *Solkat* cases overrules the previous interpretation * of the Elmira City Charter. (*Baker* v. *State of New York,* 176 Misc. 928.)

To find liability in section 99 of the Second Class Cities Law is not to challenge the decision of the Court of Appeals when it affirmed a judgment of dismissal by this court of a claim which arose in the city of Yonkers. (*Lewis* v. *State of New York,* 258 N. Y. 568.) As we have heretofore commented, the work of elimination there did not effect a change of grade but a diversion of the street leaving access from one direction as it had been.† Each case must be determined upon its own facts. Here, there was not only a change of grade of Prospect avenue at its intersection with Eldredge street, not only a diversion of its course from a point sixty feet north from the northeast corner of claimant's property, not only the closing of Prospect avenue with a retaining wall at claimant's north line, but in addition to these changes Prospect avenue is closed at the point where the railroad formerly crossed it at grade, which point is south of claimant's property but within the block. Thus, claimant cannot go out of his property to the next intersecting street in either direction except through the new diverted and depressed section of Prospect avenue which begins opposite a point about midway in claimant's property line.

The recital of the physical changes brings the thought that, in line with well-known authorities, claimant was entitled to have that portion of Prospect avenue upon which his property abutted, kept open in at least one direction. FOLGER, J., said in *Fearing* v. *Irwin* (55 N. Y. 486): " Though one public way to property is closed, if there is another left, the property owner sustains no actionable damage." (See, also, *Holloway* v. *Southmayd,* 139 N. Y. 390, 411; *Reis* v. *City of New York,* 188 id. 58, 71, 72; *Matter of Joiner Street* [*City of Rochester*], 177 App. Div. 361.)

* See *Matter of Baker* v. *Mayor, etc., of City of Elmira* (156 Misc. 243); *West 158th Street Garage Corp* v. *State of New York,* (168 id. 822).

† See opinions by this court in *West 158th Street Garage Corp., Solkat* and *Mirro* cases (*supra*).

I am aware that claimant's counsel stated " the street shut off south of claimant's premises and north of the railroad tracks. That part we have withdrawn," and " I stated at the outset that we didn't intend to proceed on the theory the crossing had been shut off." Nevertheless the point south of claimant's premises where the street was shut off was the location of the pre-existing crossing at grade. This was done away with. All of the other changes were due to and followed in course upon this elimination. How can this element be disregarded in any consideration of the case? I do not think it can. It seems to me that it is an integral part of claimant's cause of action, so much so that the words of claimant's counsel, hereinabove quoted, should not be construed as a waiver since he continues to assert his client's rights and his demand for damages.

Therefore, while concurring in the result arrived at, namely, that this claimant is entitled to recover because the elimination of a grade crossing in the city of Binghamton has caused damage to his property not acquired as provided in the general grade crossing elimination act (Laws of 1928, chap. 678), it seems to me that in addition to the reasons expressed in the opinion of the presiding judge, there is another element of damages which should sustain an award in this particular case and which has not been relinquished.