Alexander Del Giorno, J.
This is a claim for damages to real property owned by the claimant caused by the appropriation by the State and the Thruway Authority of Central Park Avenue in the City of Yonkers, and the alleged change of grade of Central Park Avenue northerly from the southerly city line of the City of Yonkers, New York, to the Cross-County Parkway in the City of Yonkers and the construction therein and thereon of a section of the Thruway. The construction was begun on July 12, 1954, completed on February 18, 1957 and accepted by the Thruway Authority on March 11, 1957. The claim was filed on November 20, 1956 and has not been assigned.
Claimant’s property is situated on the west side of Central Park Avenue, consisting of about 8 acres of ground on which there are erected on the Central Park Avenue frontage a taxpayer containing four stores; to the southwest there is a group of garage buildings for housing some 70 automobiles and on the remaining property there are 10 buildings containing 174 apartments, erected about 1940, and which must be assumed were erected in conformity with the building regulations of the City of Yonkers. As a matter of fact, the State left the grade of Central Park Avenue intact except for the Thruwav construction.
Central Park Avenue was established from Woodlawn Cemetery in The Bronx, to the then Village of White Plains by chapter 400 of the Laws of 1867, by which the Commissioners were given power to extend, lay out, widen and grade it.
Before the commencement of the Thruway construction, therefore, Central Park Avenue had been established as a public street 100 feet wide, and a main artery of travel from New York City through Westchester County terminating in the City of White Plains.
The State contends that the claimant has not proven that there was an established grade for Central Park Avenue. The court determines that such grade had been established pursuant to chapter 400 of the Laws of 1867, and that even if not so established it had been established by user, acquiescence or recognition without any formal ordinance on the part of the City of Yonkers. (Cook v. State of New York, 176 Misc. 947, affd. 267 App. Div. 847.) Having himself travelled on Central Park Avenue for some 30 years, the court knows that its grade remained intact during that period.
*35 At the time of the Thruway construction, in July, 1954, the stores of the taxpayer were all rented, three at a monthly rent and the fourth being used as an office for the development. During the time of construction, one store was vacated in October, 1955, and remained so until August, 1957; the two other stores asked for and received reductions in rent, one of them going out of business in September, 1956, and remaining vacant until August, 1957.
The Thruway is laid out in and over Central Park Avenue from the northerly city line of New York to Yonkers Avenue on the north; on the east and west sides one-way service roads were provided, the one in front of claimant’s property becoming known as Central Park Avenue South, and running one way south, and the one on the easterly side becoming Central Park Avenue North, and running one way north. Claimant’s property is located about halfway between Yonkers Avenue and McLean Avenue, a distance of some 1.22 miles. In the center of Central Park Avenue, where the Thruway exists, starting a short distance south of McLean Avenue, which is the second street north of the New York City line, the center was depressed, so as it passed under McLean Avenue it was 20 feet below McLean Avenue. After so passing under McLean Avenue, the Thruway takes a pitch upward and as it so proceeds upward, it scales 6 feet and 6 inches to the center line of the Thruway at point C-47 of the maps to 11 feet at point C-49, between which points it was conceded claimant’s property lies. Claimant’s expert testified that Central Park Avenue South remained at grade and then the Thruway was superimposed on Central Park Avenue to a height of 6 feet and 6 inches at the first point and at the second point to a height of 11 feet. The protecting side wall of the Thruway in front of the property is actually 9 and one-half feet at point C-47 and 14 feet at C-49 above the grade of Central Park Avenue South.
After reaching the 11-foot point in front of claimant’s property, there was a downward pitch in the roadbed of the Thruway resulting in the Thruway passing under Yonkers Avenue to a depth of 18 feet.
Claimant maintains that Central Park Avenue as it previously existed, no longer existed, and that the part of Central Park Avenue in which the Thruway lies now interferes substantially with access to claimant’s property, in that (1) in order to get in or out of claimant’s property, one must detour either at McLean Avenue or Yonkers Avenue; (2) to get directly across Central Park Avenue, the same detour must be followed, and (3) bus connections are only one way, and transfers on buses *36 can only be effected some eight blocks away. Claimant contends also that the alleged change of the grade and interferences with ingress, egress, access, light and air provide a basis for her claim. Claimant makes no claim that any portion of her property was appropriated by the State in connection with the construction of the Thruway.
The claimant’s witness, Mr. Aries, a real estate broker, testified he valued the land in the business zone (approximately 155 foot frontage by 100 foot depth) before the construction at $200 a front foot, and the remainder at $25,000 per acre, or a total of $236,500. After completion of the Thruway, he set a valuation of $171,500 for the entire business area, claiming that its commercial value was destroyed. He stated that the depreciation replacement cost in July, 1954 of the taxpayer was $36,000; that after March, 1957 its commercial use was destroyed, therefore ascribing to it a land value only of $20,000 per acre. He based the damage sustained by claimant on the interference with accessibility to claimant’s property, whether by bus or automobile.
At the close of claimant’s case, the parties agreed that no claim lies as to grade of Central Park Avenue North. The only claim in issue is for damage caused by the change upon Central Park Avenue wrought by the Thruway construction.
Mr. Keller, the State’s expert real estate appraiser, placed a valuation on the entire property before the construction at a total of $920,000, comprised of $225,000 for the land area included in the apartment house and the business area, and $695,000 for building improvements. The value of the property after the Thruway construction he placed at the total of $880,000, giving a valuation of $205,000 for the land and $675,000 for the buildings. He did not set a definite figure on the value of the taxpayer, including it in his computation of the loss of $40,000. He stated that damage is confined only to the business; that the apartment rental remains the same, not having been affected, particularly because the rents were now frozen. While he agrees that the traffic condition has made a radical change, he states that at $25 per room (the then rental) any vacant apartment would obtain immediate rental. He stated that the highest and best use is its present use, and if vacant would be even greater because rents would not be subject to control.
Both appraisers stressed the fact that the claimant’s holding was affected adversely by interference with accessibility, Mr. Keller holding that the property was not affected additionally by the change of grade and Mr. Aries stating that it was.
*37 At the close of the entire case, having reserved the right to do so, the State moved to dismiss on the ground that claimant had failed to introduce sufficient evidence to constitute a prima facie cause of action, and moved for judgment upon the ground that claimant failed to prove a case against the defendant "by a fair preponderance of the evidence.
The question to be determined herein is whether the State is liable to the claimant for the alleged damages sustained by her. In the absence of any statutory liability or actual taking of property, consequential damages are generally not compensable, since such loss is considered to be damnum absque injuria. An abutter, the value of whose lands is impaired or whose easement rights are interfered with, has no right to compensation unless there is a physical invasion of his property which impairs its use although it does not effect a “taking” in the technical sense of the term. In such case, compensation may be required only for a severe interference which is tantamount to a deprivation of the use or enjoyment of property. .(2 Nichols, Law of Eminent Domain, § 6.4432, subd. [1].)
Highway Law (art. XII-A, § 347, subd. 14) provides as follows: “If the work of constructing, reconstructing and maintaining such state thruways and bridges thereon causes damage to property not acquired as above provided, the state shall be liable therefor, but this provision shall not be deemed to create any liability not already existing by statute. Claims for such damage may be adjusted by the department of public works, if the amounts thereof can be agreed upon with the persons making such claims, and any amount so agreed upon shall be paid as a part of the cost of such improvement as prescribed by this section. If the amount of any such claim is not agreed upon, such claim may be presented to the court of claims which is hereby authorized to hear such claim and determine if the amount of such claim or any part thereof is a legal claim against the state and if it so determines, to make an award and enter judgment thereon against the state, provided, however, that such claim is filed with the court of claims within six months after the final acceptance of the work of the improvement by the superintendent of public works.”
Section 99 of the Second Class Cities Law provides as follows: ‘1 Alteration of grades and names of streets. The grade of any street shall not be fixed or established except by direction of the common council. The grade of a street heretofore or hereafter legally established shall not be changed, except by direction of the common council, and except also upon compensation for damages done, to be ascertained in and by the proceedings *38 provided by law for ascertaining damages for lands taken for the opening of streets. The common council shall not alter the name of any street except by ordinance. No ordinance altering the name of any street shall be passed by the common council until such ordinance shall have been published at least once in each of two successive weeks in the official paper or papers.” (As amd. by L. 1917, ch. 52, § 1; L. 1919, ch. 167, eif. April 9, 1919.)
The above-quoted section applies to the City of Yonkers since it was at the time of the appropriation a second class city. (See McKinney’s Cons. Laws of N. Y., Book 20, General City Law, “ the Definition and Classification of Cities ”, and the 1959 Legislative Manual [p. 952] which reports the 1950 census population of the City of Yonkers to be 152,798, which places Yonkers in the second class city category.)
Section 31 of title VII (L. 1872, ch. 866) and sections 2, 3, 4 and 5 of article VI of the Charter of the City of Yonkers as supplemented by chapter 452 of the Laws of 1908, contain provisions similar to the above-quoted section 99 of the Second Class Cities Law.
In turn, such provisions are similar to those dealing with villages under the Village Law. In this connection, in the case of Matter of Lawrence v. Village of Mamaroneck (263 N. Y. 455, 457-459) the court stated:
“'Under the settled law of this state damage caused to an abutter by a change of the grade of a street by the municipal authorities was damnum absque injuria. (Radcliff’s Exrs. v. Mayor, etc., of Brooklyn, 4 N. Y. 195; Heiser v. Mayor, etc. of N. Y., 104 N. Y. 68.) The hardship of this rule, however, was early appreciated and legislation was passed to secure abutters who improved their property on the faith of the established grade of a street from alteration of that grade without compensation. So, in 1883, a statute (Chap. 113) enacted that whenever the grade of any street or highway in any incorporated village should be changed so as to injure or damage the buildings or real property adjoining such highway, the owners thereof might apply to the Supreme Court for the appointment of three commissioners to ascertain and determine their damages, which damages should be a charge on the village, town or other municipality chargeable with the maintenance of the street or highway so altered or changed. ’
“ These words are taken from the opinion of this court in Matter of Torge v. Village of Salamanca (176 N. Y. 324, 327) decided in 1903. Chapter 113 of the Laws of 1883 reads as follows: ‘ Section 1. Whenever the grade of any street, high *39 way or bridge in any incorporated village in this state shall be changed or altered so as to interfere in any manner with any building or buildings situate thereon, or adjacent thereto, or the use thereof, or shall injure or damage the real property adjoining such highway so changed or altered, the owner or owners of such building or real estate may apply to the supreme court in the judicial district in which such property is situated for the appointment of three commissioners to ascertain and determine the amount of damage sustained thereby; due notice of such application shall be given to the person or persons having competent authority to make such change or alteration. * * *
“ 1 § 3. All damages ascertained and determined under the provisions of this act, together with the costs of such proceedings, shall be a charge upon the village, town or other municipality chargeable with the maintenance of the street, highway or bridge so altered or changed. * * * ’
“ These provisions have been carried forward into the Village Law (Cons. Laws, ch. 64, § 159, subd. 2), so that from 1883 down to date a village has been liable to an abutter for the damage done by change of grade of the highway, unless the Legislature intended to modify this law by chapter 459 of the Laws of 1929.
“ The liability of the village does not seem to have been made dependent upon that part of the statute relating to the maintenance of the street. The liability and the payment of damages appear to have been distinct considerations. All damages, it is said, shall be a charge upon the village, town or other municipality chargeable with the maintenance of the street, highway or bridge so altered or changed. At no time do we find a village solely chargeable with the maintenance of all streets, highways or bridges within its precincts.”
And at pages 461 to 462: “ Until the Legislature by clear and unmistakeable language takes away the relief and remedy which it has afforded for so many years to abutting property owners in such cases we shall adhere to the provisions of section 159 of the Village Law as giving relief, even though the amendment of section 170 and repeal of section 172 of the Highway Law have lifted the responsibility of villages for the partial maintenance and repair of State highways.”
In the case of Mirro v. State of New York (172 Misc. 963, affd. 260 App. Div. 525, affd. 285 N. Y. 678), the Court of Claims had made an award to claimant for damage to real property located on Central Avenue, Queens, caused by a change of grade of Central Avenue in connection with the elimination of a rail *40 road grade crossing. Central Avenue was one of the main connecting streets between Brooklyn and Queens. It formerly was 80 feet wide, and the central 60 feet had been depressed 11 feet and 1 inch opposite claimant’s property. A sidewalk and marginal driveway was maintained along the northerly side of the avenue, being separated from the depressed portion by a wall about 5 feet high.
In making an award, the Court of Claims had relied upon the following authorities: Askey & Hager v. State of New York (240 App. Div. 451, affd. 266 N. Y. 587); Champion Oil Co. v. State of New York (161 Misc. 143, affd. 251 App. Div. 781, motion for leave to appeal to Court of Appeals denied 275 N. Y. 649) ; Caldwell & Ward Brass Co. v. State of New York (161 Misc. 147, affd. 251 App. Div. 781, affd. 277 N. Y. 547); Knights v. State of New York (161 Misc. 552, affd. 251 App. Div. 781, motion of leave to appeal to Court of Appeals denied 275 N. Y. 650) ; Buffalo Co-operative Stove Co. v. State of New York (252 App. Div. 228); Matter of Atherton v. Village of Allegany (270 N. Y. 525); Matter of Reits v. Village of Allegany (270 N. Y. 525); Matter of Trustees of First M. E. Church of Whitehall (272 N. Y. 562); West 158th Street Garage Corp. v. State of New York (256 App. Div. 401, 404).
In affirming the award made by the Court of Claims, the Appellate Division held (p. 526) as follows: “ Grade crossing eliminations in the city of New York are effected under the ‘ New York City Grade Crossing Elimination Act ’ (Laws of 1928, chap. 677, as amd.), being sections 2041 et seq. of the Unconsolidated Laws. Unless there be statutory authority damages may not be awarded for injury to unappropriated real property adjacent to an elimination project. Section 2047, supra, [Laws of 1928, chap. 677, § 7] is the authority for this judgment. ‘ If the work of such elimination causes damage to property not acquired as above provided, the State shall be liable therefor in the first instance, but this provision shall not be deemed to create any liability not already existing in law.’ The section in a later portion fixes the method for presentation of a claim to the Court of Claims. Liability existed in law on behalf of the city for damages to unappropriated adjacent real property suffered through the change of the established grade of a street. ‘ An abutting owner who has built upon or otherwise improved his property in conformity with the grade of any street or avenue established by lawful authority, and such grade is changed after such buildings or improvement have been erected, and the lessee thereof, shall be entitled to damages for such change of grade.’ (Greater N. Y. Charter, § 951.) ”
*41 Three of the cases cited as having been relied upon by the Court of Claims had to do with the Villages of Allegany and Whitehall. As to them, the Appellate Division said (p. 527):
“ In connection therewith section 2016 of the Grade Crossing Elimination Act (Laws of 1928, chap. 678) applies ‘ outside of the cities of New York, Buffalo and Syracuse.’ The language is identical with section 2047, earlier quoted, and subdivision 2 of section 159 of the Village Law creates the liability in connection with the change of grade in a village street, the language being: 1 Whenever the grade of any street, highway or bridge in any incorporated village in this State shall be changed or altered so as to interfere in any manner with any building or buildings situate thereon, or adjacent thereto, or the use thereof, or shall injure or damage the real property adjoining such highway * * *.’ Damages may be recovered against the municipality charged with the maintenance of the street.
“ The Askey & Hager and West 158th Street cases (supra) dealt respectively with eliminations in Buffalo and New York city.
‘ ‘ Under the authorities, it has been determined that sections 2016 and 1047 (supra) create liability on behalf of the State in connection with elimination projects whenever and wherever liability exists at law for damages arising through a change of grade for any purpose. The Village Law (supra) creates liability against the municipality having charge of the village streets whenever a grade is changed so as to interfere with the adjacent buildings. The State in elimination projects is liable in the first instance therefor under the Atherton and Whitehall cases (supra). The Greater New York Charter (§ 951) creates liability whenever for any purpose an established grade is changed so as to interefere with adjacent buildings. The State in elimination projects is liable in the first instance therefor under the Askey Hager and West 158th Street cases (supra).”
Notwithstanding the fact that no part of the claimant’s property has been appropriated or was physically altered, there may be a recovery. (Mistretta v. State of New York, 201 Misc. 946, affd. 280 App. Div. 960.) In the Mistretta case, claimants owned and occupied a dwelling house on the southwest corner of the intersection of South Work Street and Lister Avenue in the Village of Falconer, Chautauqua County, New York. In eliminating a grade crossing over the Erie Railroad the State closed South Work Street at a point about 500 feet south of claimant’s property, closed Lister Avenue at the east by an embankment, moved South Work Street to the east onto a newly acquired right of way and changed the grade of South Work *42 Street beginning at a point to the north of its former intersection with Lister Avenne. From that point the new road ascended on a 5% grade until it crossed the railroad tracks at a height 28.9 feet above the roadbed. Immediately in front of claimant’s dwelling there was an embankment whereon the new South Work Street is 9% feet higher than the old pavement. The old pavement was 40 feet wide and thus remained open and undisturbed for a width of 18 feet. There was no formal appropriation of claimant’s property, nor was any part of their property physically disturbed or altered. The court found the State liable upon the authority of section 6 of chapter 678 of the Laws of 1928, subdivision 2 of section 159 of the Village Law, Knights v. State of New York (161 Misc. 552, affd. 251 App. Div. 781, supra), Delafield v. State of New York (161 Misc. 552, affd. 251 App. Div. 781), and Atherton v. Village of Allegany (244 App. Div. 890, affd. 270 N. Y. 525). In its opinion, the court said (p. 948):
“ The Attorney-General renews the old argument that the decision in Askey & Hager, Inc. v. State of New York (240 App. Div. 451 [1934], affd. 266 N. Y. 587) which was the foundation of our finding of liability in Knights v. State of New York (supra) applied only to the particular situation existing in that case, namely, that when chapter 844 of the Laws of 1926 became effective the grade crossing project at Colvin Street had already been initiated by the grade crossing commission of the City of Buffalo. This argument was thoroughly expounded and disposed of in the case of Mirro v. State of New York (172 Misc. 963 [1939], affd. 260 App. Div. 525, affd. 285 N. Y. 678). But, says the Attorney-General, the decision in Mirro v. State of New York was not only erroneous in its interpretation of the effect of the New York City charter provisions but has been effectively overruled by subsequent cases, namely, Matter of Young v. Kracke (262 App. Div. 67 [1941], affd. 287 N. Y. 634, motion for reargument denied 287 N. Y. 754); Bachmann v. New York City Tunnel Authority (47 N. Y. S. 2d 767 [1941], affd. 263 App. Div. 945, appeal dismissed 288 N. Y. 707); New York Tel. Co. v. New York City Tunnel Authority (265 App. Div. 1051 [1943], affd. 291 N. Y. 766), and New York City Tunnel Authority v. Consolidated Edison Co. (269 App. Div. 449 [1945], revd. 295 N. Y. 467, motion for- reargument denied 296 N. Y. 745).
“ The argument is subtle but does not carry conviction when one examines the statutes concerned in these later cases.”
In the light of the foregoing, the court believes it to be clear that an abutting owner may be entitled to damages to real prop- *43 erty caused by a change of grade of the street upon which such property faced, even though there had been no appropriation of the owner’s property, and even though the change of grade did not affect the full width of the street, but only a portion thereof.
Upon the facts of this case, the court would have granted a judgment herein if the work had been performed by the City of Yonkers. Under the derivative statutes quoted above, the State assumes the liability, and consequently the court finds the claimant to have been damaged in the sum of $40,000, which will be reflected in the findings herewith signed by the court, together with interest from November 20, 1956, the date the claim was filed, to the date of entry of judgment.
All motions heretofore made by the State upon which decision was reserved are hereby denied.
This constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.
Let judgment be entered accordingly.